In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00087-CV
______________________________


MICHAEL PULLARA, Appellant
Â 
V.
Â 
Â Â Â Â Â Â Â Â Â Â Â AMERICAN ARBITRATION ASSOCIATION, INC., PAXSON & Â Â Â ASSOCIATES, P.C., AND STEPHEN B. PAXSON, Appellees


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 157th Judicial District Court
 Harris County, Texas
Trial Court No. 2003-46148


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â The arbitration of Michael Pullara's dispute with Becker Fine Builders, Inc. (Becker), a
Houston builder, arising out of an agreement for remodeling Pullara's apartment, did not turn out as
Pullara had hoped.


 The American Arbitration Association (AAA) arbitrator, Stephen B. Paxson,
awarded Becker a total of $97,442.29


 against Pullara. Approximately one year later, however,
Pullara discovered something Paxson had allegedly not disclosed before being selected as
arbitratorâthat, for many years, Paxson had acted as general counsel for the Greater Houston
Builders Association (GHBA). Before being selected as arbitrator, Paxson had disclosed his
membership in GHBA, but apparently not his representation of that organization.



Â Â Â Â Â Â Â Â Â Â Â Â Finding himself beyond the standard ninety-day deadline to seek to vacate the award under
Section 171.088 of the Texas Civil Practice and Remedies Code, Pullara did not move to set aside
the award. Instead, he sued Paxson and the AAA for damages he alleges were caused by Paxson's
failure to disclose his work as general counsel for the GHBA. Pullara contends Paxson's alleged
failure to disclose the attorney-client relationship with GHBA revealed a bias in Becker's favor,
which Pullara believes was a material fact he was entitled to know when he chose the arbitrators to
strike from the AAA's list.
Â Â Â Â Â Â Â Â Â Â Â Â Pullara appeals the trial court's granting summary judgment


 against him in favor of the
defendants. We affirm the judgment of the trial court because Pullara's claims are barred by the
doctrine of arbitral immunity.
Â Â Â Â Â Â Â Â Â Â Â Â The propriety of a summary judgment is a question of law. Therefore, review of the trial
court's decision is de novo. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). Summary
judgment for a defendant is proper when the defendant negates at least one element of each of the
plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative
defense. Sci. Spectrum v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997); Wornick Co. v. Casas, 856
S.W.2d 732, 733 (Tex. 1993).
Â Â Â Â Â Â Â Â Â Â Â Â A summary judgment movant has the burden of showing that there is no genuine issue of
material fact and that it is entitled to judgment as a matter of law. Nixon v. Mr. Prop. Mgmt. Co.,
690 S.W.2d 546, 548â49 (Tex. 1985). Once a movant establishes entitlement to summary judgment,
the burden shifts to the nonmovant to show why summary judgment should not be granted. Casso
v. Brand, 776 S.W.2d 551, 556 (Tex. 1989).
Â Â Â Â Â Â Â Â Â Â Â Â When a trial court's order granting summary judgment does not specify the ground or grounds
on which it relied for its ruling, summary judgment will be affirmed on appeal if any of the theories
advanced are meritorious. Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995). In this
case, the trial court did not specify the grounds on which it relied for its ruling. Therefore, reversal
is proper only if each theory presented by Paxson and the AAA fails.
Â Â Â Â Â Â Â Â Â Â Â Â Appellees assert that Pullara's claims are barred by the doctrine of arbitral immunity. We
agree.
Â Â Â Â Â Â Â Â Â Â Â Â The doctrine of arbitral immunity emanates from judicial immunity. Judicial immunity
provides judges with absolute immunity for their judicial acts. See Stump v. Sparkman, 435 U.S.
349, 355â56 (1978). The doctrine was first recognized by the English courts to protect "that
independence without which no judiciary can either be respectable or useful." Butz v. Economou,
438 U.S. 478, 509 (1978). Judicial immunity allows a judge to make an unbiased determination on
the merits of a controversy without being swayed by the specter of litigation against the judge
personally.
Â Â Â Â Â Â Â Â Â Â Â Â An arbitrator's role is functionally equivalent to that of a judge. Olson v. NASD, 85 F.3d 381,
382 (8th Cir. 1996). As with the judiciary, it is necessary to protect arbitrators from undue influence
and safeguard their independence. To those ends, judicial immunity has been extended to arbitrators
as well as their sponsoring organizations. See id.; Austern v. Chicago Bd. Options Exch., Inc., 898
F.2d 882, 886 (2d Cir. 1990).
Â Â Â Â Â Â Â Â Â Â Â Â The only Texas case to decide arbitral immunity is Blue Cross Blue Shield v. Juneau, 114
S.W.3d 126 (Tex. App.âAustin 2003, no pet.). The facts in Juneau are strikingly similar to those
with which we are confronted. Blue Cross Blue Shield had a dispute with HealthCor Liquidation
Trust over payments involved with medical services and supplies. The matter was submitted to
arbitration. James J. Juneau, as a member of the arbitration panel, rendered an award in favor of
HealthCor. Blue Cross filed suit against Juneau alleging he had failed to disclose a prior relationship
with a HealthCor attorney. Juneau had previously worked at the same law firm as Jeffrey Seckel,
an attorney employed by HealthCor. Blue Cross asserted that, had it known of the relationship
before the arbitration began, it would have sought Juneau's disqualification from the arbitration
panel. The trial court held that Blue Cross' claims were barred by the doctrine of arbitral immunity
and dismissed the suit for want of subject-matter jurisdiction. Juneau, 114 S.W.3d at 128â30. The
Juneau court affirmed the trial court's judgment. Id. at 133, 136.
Â Â Â Â Â Â Â Â Â Â Â Â Pullara contends Juneau erroneously recognized the doctrine of arbitral immunity and asks
this Court to issue a contradictory holding. We decline this invitation, believing the conclusion
reached by the Juneau court is ultimately correct.
Â Â Â Â Â Â Â Â Â Â Â Â The parties do not dispute that the arbitration in this case was governed by the Texas
Arbitration Act. See Tex. Civ. Prac. & Rem. Code Ann. Â§Â§ 171.001â.098 (Vernon 2005). That
Act prescribes that Texas law regarding arbitration "shall be construed to effect its purpose and make
uniform the construction of other states' law applicable to an arbitration." Tex. Civ. Prac. & Rem.
Code Ann. Â§ 171.003. This provision requires us to interpret our law as it regards arbitration in a
manner that is consistent with the law of the other states, so long as that does not lead to a conflict
with the statutory framework.
Â Â Â Â Â Â Â Â Â Â Â Â Arbitral immunity is recognized by virtually all of the various states, as well as by the federal
courts. See Feichtinger v. Conant, 893 P.2d 1266, 1267 (Alaska 1995) ("Arbitral immunity is the
rule in virtually all jurisdictions, and we now adopt it." (Footnote omitted.)); Baar v. Tigerman, 211
Cal. Rptr. 426, 428 (Ct. App. 1983) ("Courts of this country have long recognized immunity to
protect arbitrators from civil liability for actions taken in the arbitrator's quasi-judicial capacity.");
Seligman v. Allstate Ins. Co., 756 N.Y.S.2d 403, 405 (Sup. Ct. 2003) ("rules precluding lawsuits
against arbitration tribunals and arbitrators have been upheld by the courts of this state and other
jurisdictions"); Olson, 85 F.3d at 382 ("courts of appeals have uniformly extended judicial and
quasi-judicial immunity to arbitrators"); see also Peter B. Rutledge, Toward a Contractual Approach
for Arbitral Immunity, 39 Ga. L. Rev. 151, 151â52 (2004).
Â Â Â Â Â Â Â Â Â Â Â Â This case is predicated on the claim that an arbitrator failed to disclose a source of possible
bias. Other jurisdictions have scrutinized nondisclosure claims and have held that arbitrators are
immune from such claims. In L & H Airco, Inc. v. Rapistan Corp., the Minnesota Supreme Court
stated:
Failure to disclose possible conflicts of interest creates at the least an
impression of bias. An impression of bias contaminates the decision making process
when neutrality is essential and is not condoned by this court. Nevertheless, we
decline to permit a civil suit against the arbitrator for failure to disclose prior business
or social contacts because of our policy of encouraging arbitration and of protecting
the independence of the decision made. Permitting civil suit for a lapse in disclosure
would chill the willingness of arbitrators to serve because of the difficulty of
remembering all contacts, however remote, with parties to the arbitration.

446 N.W.2d 372, 377 (Minn. 1989).

Â Â Â Â Â Â Â Â Â Â Â Â A California court succinctly stated, "California and other jurisdictions recognize that arbitral
immunity applies where one of the parties to the arbitration seeks to impose liability based on the
alleged bias of the arbitrator or the sponsoring organization." Stasz v. Schwab, 121 Cal. App. 4th
420, 441 (Cal. Ct. App. 2004). As already noted, this same decision has already been reached in
Texas. See Juneau, 114 S.W.3d 126.
Â Â Â Â Â Â Â Â Â Â Â Â Were we to adopt Pullara's position and declare that the doctrine of arbitral immunity is
unavailable in this state, we would run counter to, not only our sister courts of appeals, but also
virtually all other states and the federal system. This would directly contravene the legislative
mandate set forth in Section 171.003 quoted above.
Â Â Â Â Â Â Â Â Â Â Â Â In sum, it is the general principle that arbitrators and their sponsoring organizations are
immune from civil liability for bias or the failure to disclose a possible source of bias. We adopt that
principle.
Â Â Â Â Â Â Â Â Â Â Â Â Pullara asserts that recognition of arbitral immunity conflicts with the legislative intent
behind Section 154.055 of the Texas Civil Practice and Remedies Code. Section 154.055 grants
immunity to volunteer arbitrators and mediators so long as they do not receive any compensation and
do not "act with wanton and willful disregard of the rights, safety, or property of another." Tex. Civ.
Prac. & Rem. Code Ann. Â§ 154.055(a) (Vernon 2005). Pullara presents this statute as evidence the
Legislature intended that paid professional arbitrators be subject to civil liability. In support of this,
he cites the legislative history of Section 154.055:
Currently, impartial third parties who voluntarily serve as arbitrators or mediators in
ADR proceedings are subject to the same degree of liability as those who were
compensated for their services. As a result, volunteers must obtain insurance to
protect themselves against the threat of negligence suits. This discourages persons
from voluntarily participating in ADR proceedings. 

House Research Organization, Daily Floor Report, Wednesday, April 28, 1993 H.B. 2237,
page 98.
Â 
Volunteer impartial third parties â such as mediators or arbitrators for court-appointed non-binding arbitration â are subject to the same degree of liability as
those who participate in alternative dispute resolution on a fee for services basis. 

House Comm. On State Affairs, Bill Analysis, H.B. 2237, 73rd Leg. R.S. (1993). By its own
language, however, the statute has no effect on the liability or immunity of paid arbitrators. It plainly
states, "This section neither applies to nor is it intended to enlarge or diminish any rights or
immunities enjoyed by an arbitrator participating in a binding arbitration pursuant to any applicable
statute or treaty." Tex. Civ. Prac. & Rem. Code Ann. Â§ 154.055(b) (Vernon 2005). Because of
this, we believe recognition of immunity for professional arbitrators does not conflict with the
statute.
Â Â Â Â Â Â Â Â Â Â Â Â Pullara also contends that arbitral immunity conflicts with prior holdings of the Texas
Supreme Court. See Mariner Fin. Group v. Bossley, 79 S.W.3d 30 (Tex. 2002); Burlington N. R.R.
v. TUCO, 960 S.W.2d 629 (Tex. 1997). In TUCO, the Texas Supreme Court held that a
prospective neutral arbitrator selected by the parties or their representatives exhibits
evident partiality if he or she does not disclose facts which might, to an objective
observer, create a reasonable impression of the arbitrator's partiality. We emphasize
that this evident partiality is established from the nondisclosure itself, regardless of
whether the nondisclosed information necessarily establishes partiality or bias.
960 S.W.2d at 636.
Â Â Â Â Â Â Â Â Â Â Â Â TUCO involved an arbitration panel of three arbitrators. Two of the arbitrators were "partial"
arbitrators who were chosen by the parties, and the third was a "neutral" arbitrator who was chosen
by the two partial arbitrators. The neutral arbitrator had received a lucrative referral from one of the
partial arbitrators, which he did not disclose to the parties. The panel ruled against TUCO, which
later filed a motion to vacate the award under the former Section 171.014 of the Texas Civil Practice
and Remedies Code.



Â Â Â Â Â Â Â Â Â Â Â Â Section 174.014 required a court to vacate an arbitration award if there has been "evident
partiality by an arbitrator appointed as a neutral." Accord Tex. Civ. Prac. & Rem. Code Ann.
Â§Â 171.088(2)(A). The court held, "[T]he fact that a reasonable person could conclude that the
referral might affect [the arbitrator's] impartiality triggers the duty of disclosure. [The arbitrator's]
failure to disclose the referral thus constitutes evident partiality under the Act." TUCO, 960 S.W.2d
at 639. The court then remanded the case to the trial court with instructions to vacate the arbitration
award. Id. The same standard was applied in Bossley. 79 S.W.3d 30.
Â Â Â Â Â Â Â Â Â Â Â Â Pullara asserts that the duty imposed on arbitrators to disclose facts which might show
partiality or bias is meaningless if there are not repercussions for an arbitrator when he or she shirks
that duty. We believe our decision is consistent with the analysis of the Texas Supreme Court.
Â Â Â Â Â Â Â Â Â Â Â Â The TUCO decision examined when the "evident partiality" standard is met, requiring an
arbitration award to be vacated. To that end, the court said that a neutral arbitrator had a duty to
disclose sources of possible bias and held that, if the arbitrator does not perform that duty, an award
should be vacated. The opinion did not create a cause of action against arbitrators for failing to
perform their duty to disclose; it merely examined when particular requirements of the vacatur
statute are satisfied. Providing arbitrators with immunity does not relieve them of their duty to
disclose and does not conflict with the holding in TUCO.
Â Â Â Â Â Â Â Â Â Â Â Â In accordance with the Texas Arbitration Act, and consistent with the laws of the various
states, we hold that arbitrators are immune from civil liability for failing in their duty to disclose
sources of possible bias or partiality.


 Therefore, the trial court's granting summary judgment against
Pullara was properly based on arbitral immunity. Because our holding on arbitral immunity is
dispositive, we need not address the other possible grounds supporting the summary judgment.
Â Â Â Â Â Â Â Â Â Â Â Â We affirm the judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â April 20, 2006
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â May 11, 2006



001pt;text-align:justify;text-justify:inter-ideograph;
mso-pagination:widow-orphan;tab-stops:center 3.25in'>  ROBERT G. SCHLEIER, JR., AND SCHLEIER & BROWN, P.C., Appellees

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the 124th
Judicial District Court

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Gregg County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial Court
No. 2005-2176-B

Â 

Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Opinion by Justice Carter








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  O P I N I O N

Â 

Â Â Â Â Â Â Â Â Â Â Â  John Leeman
Isaacs and Susan Gail Isaacs appeal from a final take-nothing summary judgment
entered in favor of their former attorney Robert G. Schleier,
Jr., and his firm Schleier & Brown, P.C.Â  We affirm the trial courtÂs summary judgment
because we conclude that the statute of limitations barred the IsaacsesÂ claims, and no tolling provisions apply. 

I.Â Â Â Â Â Â Â Â Â  Factual
and Procedural History 

Â Â Â Â Â Â Â Â Â Â Â  The claims involved in this lawsuit stem from
actions which resulted in a prior lawsuit filed by Charles Bishop against the Isaacses and Schleier and Schleier &
Brown, which we decided in our opinion Isaacs v. Bishop, 249 S.W.3d 100
(Tex. App.ÂTexarkana 2008, pet. denied), referred to by the parties as the
Harrison County litigation.Â  The events
giving rise to the prior lawsuit are imperative to the understanding of the
claims and arguments in this case. 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  The Sale of the Racetrack to Bishop and
Alleged Default

Â Â Â Â Â Â Â Â Â Â Â  The Isaacses
purchased the Hallsville Dragway (the racetrack) from
Ken Hall in 1998.Â  Schleier prepared the
documents for the sale, including the promissory note and deed of trust between
the Isaacses and Hall.Â  In 2002, the Isaacses
wished to sell the track to Bishop.Â  They
enlisted Schleier to prepare the documents for the
sale in the same manner as in the Hall transaction. Â After meeting with John and Bishop in March
2002, Schleier prepared the documents, charging both
parties a fee.Â  The ÂDeed of Trust, Security
Agreement and Financing StatementÂ (deed of trust) listed Schleier
as the trustee, and the version signed by Bishop contained an Âinsecurity
clause,Â which could have allowed the Isaacses to
deem themselves insecure concerning the prospects for BishopÂs repayment of the
indebtedness, an occasion includedÂby definition in paragraph 3.01,
subparagraph M, of the deed of trustÂas an ÂEvent of Default,Â giving the Isaacses the ability, in such a circumstance, to accelerate
the debt and declare it wholly due.Â  

Â Â Â Â Â Â Â Â Â Â Â  This provision was not included in the deed of trust
signed by the Isaacses, and was also absent from the
1998 deed of trust from the Isaacses in favor of
Hall.Â  

Â Â Â Â Â Â Â Â Â Â Â  A few months after the sale was completed, a physical
rumble at the racetrack erupted in September 2002.Â  In our prior opinion, Isaacs, we
wrote:

Six
months after the sale, the Isaacs family--including father, mother, son, and
daughter on this occasion--visited the track and were involved in a brawl with
a handicapped track worker and his wife. Â The evidence shows that Bishop got involved in
the melee in attempting to break it up. Â Bishop
called the police, who arrested John Isaacs. Â When released from jail the next morning, John
Isaacs reportedly called Bishop and attempted to get Bishop to change his
version of events to shift blame away from John Isaacs. Â That attempt was, reportedly, accompanied by
threats of physical violence and fiscal destruction to Bishop; the jury found
threats did indeed occur. Â There was also
evidence that Isaacs paid two fight witnesses to testify ÂappropriatelyÂ and
that, when one began to waver, Isaacs threatened that witness with physical
violence.

Â 

249
S.W.3d at 104 (footnote omitted).Â  The Isaacses stated that Â[f]ollowing
the physical altercation, hard feelings developed between John Isaacs and Buyer
Bishop,Â which prompted Âinvestigation into the circumstances of the operations
of the [racetrack].ÂÂ  

Â Â Â Â Â Â Â Â Â Â Â  This investigation led to the
conclusion that Bishop was in violation of terms of the security agreement and
deed of trust for failure to deliver Âfull insurance policies naming the Isaacs[es] as additional insured[s].Â Â As a result, Schleier issued a
notice of default on the IsaacsesÂ behalf on
September 25, 2002, stating Âthe Isaacs[es] have
instructed me to begin foreclosure proceedings against the Property.Â Â On September 30, 2002, BishopÂs attorney Bruce
A. Craig responded to the notice of default in the following manner: 

My
understanding of the transaction is that your firm represented both sides to
the deal.Â  Under those circumstances, my
client objects to your representation in this matter of the Isaacs[es] and demands your immediate withdrawal as counsel.Â  In as much as you have represented my client
in this the [sic] same matter through the closing of the sale, a clear conflict
exists which require[s] you to withdraw from further representation of the
Isaacs[es] in this matter under the Texas Rules of
Disciplinary Conduct. 

Â 

Schleier responded by denying
that he had represented Bishop when drafting the sale purchase documents and
reissuing notice of default.Â  

Â Â Â Â Â Â Â Â Â Â Â  B.Â Â Â Â Â Â Â  Claims in the Harrison County Suit

Â Â Â Â Â Â Â Â Â Â Â  Thus, Bishop filed suit against the Isaacses,
Schleier, his firm (and other parties) in October
2002 in Harrison County, Texas.Â  BishopÂs
petition asserted the following claims against the Isaacses:
Â (1) assault and battery against John in
connection with the brawl that led to the Isaacs familyÂs arrest; (2) common
law and statutory real estate fraud for Âfailing to disclose that the Schleier Defendants . . . had been counsel for the Isaacs
Defendants for at least the past four years,Â falsely promising that the Schleier Defendants would represent both parties to the
transaction, falsely denying that the Isaacses had
not authorized the sale of a Ford tractor, falsely representing the quantity of
land conveyed in the transaction,[1]
falsely describing the terms of the lease arrangement with the customers of the
track (Ashmore Defendants), and falsely representing
the status of title and failing to disclose known defects in the title to be
acquired; (3)Â tortious interference with
business and/or contractual relations between Bishop and the Ashmore Defendants; (4) intentional infliction of emotional
distress; and (5) civil conspiracy.Â  

Â Â Â Â Â Â Â Â Â Â Â  These causes of action were also asserted against Schleier and the firm:Â 
(1) the common law and statutory real estate fraud claims;[2]
(2) professional negligence/breach of fiduciary duty in failing to: Â disclose that he had represented the Isaacses in the past; advise that no consideration could
exchange hands until the documents were prepared and signed; timely prepare the
documentation for the transaction; draft terms that were agreed upon; disclose
how the terms in the documents presented for execution varied from those
discussed; draft terms fair to both parties, including the on-demand feature;
disclose and fully explain the significance of the conflicts of interest that
existed when representing the parties on both sides; properly transfer title to
a mobile home and in securing a release of lien from Hall; (3) intentional
infliction of emotional distress; and (4) civil conspiracy. Â Also, the ÂIsaacs[es]
sued Bishop to accelerate the maturity of the note and foreclose on the track,
seeking a judgment on the note balance.Â 
In response, Bishop sought to rescind the track purchase.Â Â Id. 

Â Â Â Â Â Â Â Â Â Â Â  C.Â Â Â Â Â Â Â  Claims
in This Gregg County Suit

Â Â Â Â Â Â Â Â Â Â Â  Throughout the litigation, Schleier
denied any attorney-client relationship with BishopÂuntil he testified on the
stand in 2005.Â  As a result of this
admission on the stand, the Isaacses instituted this
suit against Schleier and the firm in Gregg County on
September 26, 2005.Â  The IsaacsesÂ claims in this suit are based on the contention
that Â[t]he Isaacs[es] and their counsel in the
Harrison County Litigation also relied . . . on the repeated factual denials by
Attorney Schleier of any dual attorney-client
relationship.Â Â The IsaacsesÂ
petition recited, 

[t]he claims of Buyer
Bishop in the Harrison County Litigation also named Attorney Schleier and Schleier P.C. as
defendants, asserting numerous tort claimsÂ .Â .Â .Â each
theory based on the factual premise and claim that Attorney Schleier
had, during the negotiation and documentation process culminating in the sale
of the Race Track, agreed to serve as and, in fact, was also the fiduciary
attorney and agent for Buyer Bishop as well.Â 


Â 

When Schleier
testified, the Isaacses argued, 

[t]his untimely
disclosure by Attorney Schleier of the
previously-concealed and/or previously-misrepresented existence of his dual
attorney-client role with Buyer Bishop in the sale of the Race Track suddenly,
and without warning to the Isaacs[es] or their trial
attorneys, dramatically compromised and substantially impaired the ability of
the Isaacs[es] to defend the allegations against them
of fraud and non-disclosure by Buyer Bishop, . . . causing, in part, the jury
to return a large adverse verdict against John Isaacs for fraud in the
inducement and non-disclosure in the sale of the Race Track . . . .

Â 

Â Â Â Â Â Â Â Â Â Â Â  Therefore, the Isaacses
asserted the following causes of action against Schleier
and the firm:Â  (1) ÂBreach of the Agency
Contract (i.e. the AgentÂs/AttorneyÂs strict duty of loyalty to the
Principal/Client to follow clear and lawful instructions)Â in including the
on-demand feature into the deed of trust; (2) negligence in not following
instructions regarding terms to be included in promissory note, placing the on-demand
clause in the note, undertaking to represent the naturally conflicting
interests of both parties, failing to obtain informed consent of the Isaacses before undertaking any adverse representation,
failing to timely inform them that he represented both in the Harrison County
Litigation, and failing to secure something in writing from Bishop saying Schleier was only acting as attorney for the Isaacses; and (3) ÂBreach of Fiduciary Duty and Constructive
FraudÂ based on the same conduct.Â  

Â Â Â Â Â Â Â Â Â Â Â  D.Â Â Â Â Â Â Â  Outcome of the Harrison County
Litigation 

Â Â Â Â Â Â Â Â Â Â Â  The Harrison jury charge and judgment sheds light upon
the IsaacsesÂ claims in this litigation.Â  Following a trial, the jury found that an
attorney-client relationship had been established between Bishop and Schleier and that Schleier and
the firm were negligent since ÂÂbut forÂ [their] alleged negligence, Bishop
would have prevailed on his claim against the Isaacs Defendants for rescission
or reformation before the trial court July 2003.Â Â They also found that Schleier
failed to comply with his fiduciary duty to Bishop and that $171,000.00 would
compensate Bishop for SchleierÂs tortious
actions.Â  After the juryÂs verdict, Schleier settled with Bishop. 

Â Â Â Â Â Â Â Â Â Â Â  With respect to the Isaacses,
the jury found, in a general submission, that the Isaacses
committed fraud, awarded Bishop $171,000.00 in actual damages, $400,000.00 in
special damages, and $200,000.00 in attorneyÂs fees for preparation and
trial.Â  The jury also found the Isaacses intentionally inflicted emotional distress upon
Bishop with malice.Â  They awarded $50,000.00
for this claim. Â The amount owed by the Isaacses to Bishop were offset against the sums Bishop owed
to the Isaacses under a replacement note.[3]Â  The trial courtÂs final judgment
incorporating the juryÂs answers awarded Bishop $419,700.00 for actual damages
and attorneyÂs fees, and pre-judgment interest in the amount of
$22,130.74.Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â  Although the claims in this case in Gregg County stem
from the Harrison County litigation, and the Isaacses
argue they were harmed because the tort offsets to Bishop were based on SchleierÂs and the firmÂs conduct in Âthe untimely
disclosure of the dual attorney-client relationship,Â we stated in our prior
opinion, and reiterate today, that:

Although related, the
actions Bishop brought against Schleier were not the
same ones brought against the Isaacs[es]. Â [The] Isaacs[es] [do]
not argue now, and did not argue then, that either [the] Isaacs[es] or Schleier would be liable
for the damages caused by the other in those alternative causes of action. Â The trial court carefully separated the
damages to avoid overlap, and each defendant was found liable for damages for
the particular causes of action asserted against that party.

Â 

Id. at 109.Â  We also note that Schleier
was not part of the percentage of responsibility determination made by the jury
as to BishopÂs claims against the Isaacses.Â  Id.[4]Â  

Â Â Â Â Â Â Â Â Â Â Â  Additionally, we stated with respect to the fraud finding against the Isaacses:

Â Â Â Â Â Â Â Â Â Â Â  The record reveals evidence of fraud. Â There was evidence that [the] Isaacs[es] and Bishop met with Schleier
to discuss documenting the purchase of the track, that they jointly planned to
use the same terms and documents as had been used when the Isaacses
had purchased the track four years earlier, intending to draft the promissory
note to include notice and cure rights and to exclude a demand feature. Isaacs
agreed to all of this, but there is evidence that, two days before the
documents were to be mailed, Isaacs contacted Schleier
and directed him to change the terms to include the demand feature in the note.
Â Isaacs admitted that he so instructed
the attorney. Because this is some evidence that Isaacs perpetrated a fraud on
Bishop, the evidence is sufficient. . . .

Â 

Â Â Â Â Â Â Â Â Â Â Â  . . . .

Â 

Â Â Â Â Â Â Â Â Â Â Â  . . . . There is evidence that Isaacs made a
representation to Bishop about the noteÂs content, but then, unilaterally and
without notice to Bishop, directed that the document be changed to remove that
portion and to add another section that completely changed the noteÂs original
content.[5]


Â 

Isaacs, 249 S.W.3d at
114.Â  

Â Â Â Â Â Â Â Â Â Â Â  E.Â Â Â Â Â Â Â  Procedural History of This Case 

Â Â Â Â Â Â Â Â Â Â Â  With this background in mind, we turn to the procedural
history in this case.Â  The Isaacses filed a motion for partial summary judgment on the
breach of contract liability, contending that Schleier
Âwhile acting in the trusted fiduciary role of Agent/Attorney for these prior
Clients, (i.e. John Leeman Isaacs and Susan Gail
Isaacs), violated his common-law agency contract duty to follow clear and
lawful instructions given him by those prior Clients,Â by including the on-demand
provision and failing to make the transaction the same as the Hall sale. Â Schleier and the
firm filed a motion for summary judgment arguing that the IsaacsesÂ
claims were actually claims of malpractice, that malpractice claims are barred
by a two-year statute of limitations, and, therefore, that the IsaacsesÂ claims are barred.Â  Schleier also
asserted the claims were barred by res judicata and
that they were claims of contribution which should have been raised in the
Harrison County litigation.Â  The Isaacses responded by filing a no-evidence motion for
summary judgment on these affirmative defenses.Â 
They argued that these are not malpractice claims and that they did not
discover that any cause of action existed until SchleierÂs
testimony on the stand in the spring of 2005 admitting dual
representation.Â  

Â Â Â Â Â Â Â Â Â Â Â  The trial court granted a final, take-nothing summary
judgment in favor of Schleier and the firm after a
hearing.Â  The Isaacses
appeal the summary judgment on the following grounds:Â  (1)Â the two-year statute of limitations
applicable to the IsaacsesÂ claims for professional
negligence is subject to the tolling devise of fraudulent concealment based on
misrepresentations and/or nondisclosures preventing the Isaacses
from discovering the dual representation, (2) the statute of limitations is
tolled by the discovery rule, (3) the statute of limitations is tolled by Hughes
v. Mahaney, which tolls the commencement of
limitations until the underlying litigation involving a client is resolved, (4)
their claims are not malpractice claims, and (5) this is not an action for
contribution.Â  The Isaacses
also argue that the trial court erred in failing to grant their partial motion
for summary judgment, failing to grant their Âno-evidence motionÂ on the
affirmative defense of res judicata, and failing to
strike SchleierÂs testimony as unreliable expert
testimony.[6]
Â We find the statute of limitations and
lack of application of tolling provisions dispositive of this appeal.Â  

II.Â Â Â Â Â Â Â  Standard of Review 

Â Â Â Â Â Â Â Â Â Â Â  The standards for reviewing summary judgments are well
established. Â We review deÂ novo the
trial courtÂs decision to grant summary judgment. Â Tex. Mun. Power
Agency v. Pub. Util. CommÂn of Tex., 253 S.W.3d
184, 192 (Tex. 2007).Â  The party moving
for summary judgment has the burden of showing no genuine issue of material
fact exists and it is entitled to judgment as a matter of law.Â  See Tex.
R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546,
548 (Tex. 1985).Â  

Â Â Â Â Â Â Â Â Â Â Â  When both sides move for summary judgment, as they did
here with respect to the breach of contract claim and Schleier
and the firmÂs affirmative defenses, Âand the trial court grants one motion and
denies the other, reviewing courts consider both sidesÂ summary-judgment
evidence, determine all questions presented, and render the judgment the trial
court should have rendered.Â Sonat
Exploration Co. v. Cudd Pressure Control, Inc.,
340 S.W.3d 570, 574 (Tex. App.ÂTexarkana 2011, no pet.) (quoting Gilbert
Tex. Constr., L.P. v. Underwriters at LloydÂs London, 327 S.W.3d
118, 124 (Tex. 2010)).Â  Each party bears
the burden of establishing that it is entitled to judgment as a matter of law.Â  Employers Reinsurance Corp. v. Gordon,
209 S.W.3d 913, 917 (Tex. App.ÂTexarkana 2006, no pet.) (citing Guynes v. Galveston County, 861 S.W.2d 861,
862 (Tex. 1993); Ranger Ins. Co. v. Ward, 107 S.W.3d 820, 824 (Tex.
App.ÂTexarkana 2003, pet. denied)).Â  If
neither movant is entitled to summary judgment, we
must remand the case to the trial court.Â 
Id. (citing Ward, 107 S.W.3d at 824).Â  

Â Â Â Â Â Â Â Â Â Â Â  With respect to the remaining negligence, breach of
fiduciary duty, and fraud claims, Â[w]hen, as here, a defendant moves for
summary judgment based on the affirmative defense of limitations, the defendant
assumes the burden of showing as a matter of law that the suit is barred by
limitations.ÂÂ  Murphy v. Mullin,
Hoard & Brown, L.L.P., 168 S.W.3d 288, 291 (Tex. App.ÂDallas 2005,
no pet.) (citing Rogers v. Ricane Enters.,
Inc., 772 S.W.2d 76, 80Â81 (Tex. 1989)).Â 
ÂThe defendant must (1) conclusively prove when the cause of action
accrued, and (2) if raised, negate the discovery rule, by proving there is no
genuine issue of material fact about when the plaintiff discovered, or in the
exercise of reasonable diligence, should have discovered the nature of its
injury.ÂÂ  Id. (citing Burns v.
Thomas, 786 S.W.2d 266, 267 (Tex. 1990)). Â ÂIn deciding whether there is a disputed
material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as trueÂ and Â[e]very reasonable
inference must be indulged in favor of the non-movant
and any doubts resolved in its favor.ÂÂ  Nixon,
690 S.W.2d at 548Â49.Â  

III.Â Â Â Â Â Â  The
IsaacsesÂ Claims Are Malpractice Claims

Â Â Â Â Â Â Â Â Â Â Â  ÂLegal malpractice is not the only
cause of action under which a client can recover from [their] attorney.ÂÂ  Goffney v. Rabson, 56 S.W.3d 186, 190 (Tex. App.ÂHouston [14th
Dist.] 2001, pet. denied) (citing Kahlig v. Boyd,
980 S.W.2d 685, 688 (Tex. App.ÂSan Antonio 1998, pet. denied)). Â ÂWhen the facts of a case support claims
against a lawyer for something other than professional negligence,Â the claims
may be allowed.Â  Murphy v. Gruber, 241 S.W.3d 689, 695 (Tex. App.ÂÂDallas 2007, pet.
denied) (citing Latham v. Castillo,
972 S.W.2d 66, 68, 71 (Tex. 1998) (allowing pursuit of Deceptive Trade
Practices Act (DTPA) cause of action for attorneyÂs allegedly unconscionable
action in representing he was actively prosecuting client medical malpractice
claim when he was not)). Â But see Brescia v. Slack & Davis, L.L.P., No.Â 03-08-00042-CV, 2010
WL 4670322, at *7 (Tex. App.ÂAustin Nov. 19, 2010, pet. denied) (mem. op.) (attorneys may not be sued under DTPA unless misrepresentation
cannot be characterized as advice, judgment, or opinion) (citing Tex. Bus. & Com. Code Ann. Â§ 17.49(c)(1)
(West Supp. 2011)).Â  

Â Â Â Â Â Â Â Â Â Â Â  ÂTexas law, however, does not permit
a plaintiff to divide or fracture her legal malpractice claims into additional
causes of action.ÂÂ  Goffney, 56 S.W.3d at 190 (citing Greathouse v. McConnell, 982 S.W.2d 165, 172 (Tex. App.ÂHouston [1st Dist.]
1998, pet. denied); Kahlig v. Boyd, 980 S.W.2d 685, 688Â91 (Tex.
App.ÂSan Antonio 1998, pet. denied); Smith
v. Heard, 980 S.W.2d 693, 697 (Tex. App.ÂSan Antonio 1998, pet. denied); Rodriguez v. Klein, 960 S.W.2d 179, 184
(Tex. App.ÂCorpus Christi 1997, no pet.); Am.
Med. Elecs.,
Inc. v. Korn, 819 S.W.2d 573, 576 (Tex.
App.ÂDallas 1991, writ denied); Judwin Props., Inc. v. Griggs & Harrison, 911
S.W.2d 498, 506 (Tex. App.ÂHouston [1st Dist.] 1995, no writ); Bray v. Jordan, 796 S.W.2d 296, 298
(Tex. App.ÂEl Paso 1990, no writ)).Â 
Therefore, in general, courts do not allow a case arising out of an
attorneyÂs alleged bad legal advice or improper representation to be split out
into separate claims for negligence, breach of contract, or fraud, because the
Âreal issue remains one of whether the professional exercised that degree of
care, skill, and diligence that professionals of ordinary skill and knowledge
commonly possess and exercise.ÂÂ  Kimleco Petroleum, Inc. v. Morrison & Shelton,
91 S.W.3d 921, 924 (Tex. App.ÂÂFort Worth 2003, pet. denied) (citing Averitt v. PriceWaterhouseCoopers
L.L.P., 89 S.W.3d 330, 333 (Tex. App.ÂFort Worth 2002, no pet.); Sledge v. Alsup,
759 S.W.2d 1, 2 (Tex. App.ÂEl Paso 1988, no writ) (ÂNothing is to be gained by
fracturing a cause of action arising out of bad legal advice or improper
representation into claims for negligence, breach of contract, fraud or some
other name. Â If a lawyerÂs error or
mistake is actionable, it should give rise to a cause of action for legal
malpractice with one set of issues which inquire if the conduct or omission
occurred, if that conduct or omission was malpractice and if so, subsequent
issues on causation and damages.Â)).Â  

Â Â Â Â Â Â Â Â Â Â Â  Schleier
and the firm contend that the IssacsesÂ claims are
malpractice claims that are barred by a two-year statute of limitations.Â  See Tex. Civ. Prac.
& Rem. Code Ann. Â§ 16.003(a) (West Supp. 2011).Â  ÂWhen the basis for summary judgment is the
statute of limitations, the movant has the burden to
show from the record that the suit is barred by limitations.Â  Kimleco, 91 S.W.3d at 923 (Tex. App.ÂFort Worth 2003, pet.
denied) (citing Delgado v. Burns, 656
S.W.2d 428, 429 (Tex. 1983); Wright v.
Fowler, 991 S.W.2d 343, 349 (Tex. App.ÂFort Worth 1999, no pet.)).Â  ÂWhether allegations against a lawyer,
labeled as breach of fiduciary duty, fraud, or some other cause of action, are
actually claims for professional negligence or something else is a question of
law to be determined by the court.Â Â Duerr v. Brown, 262 S.W.3d 63, 70 (Tex.
App.ÂHouston [14th Dist.] 2008, no pet.) (quoting Murphy, 241 S.W.3d at 692).Â  

Â Â Â Â Â Â Â Â Â Â Â  We address each cause of action in
the IsaacsesÂ complaint. Â The Isaacses sued Schleier and the firm for breach of contract, negligence,
breach of fiduciary duty, and constructive fraud.Â  The breach of contract action was based upon
an alleged failure to follow the IsaacsesÂ
instructions to draft the documents in the same manner as in the Hall
transaction.Â  Claims of negligence arose
from not following such instructions by placing the on-demand clause[7]
in the note, undertaking dual representation without disclosure of the nature
of the representation, and in failing to timely inform the Isaacses
of the dual representation.Â  The same
actions gave rise to the breach of fiduciary duty and constructive fraud causes
of action.[8]Â  

Â Â Â Â Â Â Â Â Â Â Â  Â[T]he
plaintiff must do more than merely reassert the same claim for legal
malpractice under an alternative label.Â 
The plaintiff must present a claim that goes beyond what traditionally
has been characterized as legal malpractice.ÂÂ 
Duerr,
262 S.W.3d at 70. Â Each cause of action
is taken in turn to see whether this has been accomplished. 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  The Breach of Contract Claim Is a
Malpractice Claim 

Â Â Â Â Â Â Â Â Â Â Â  ÂRegardless of the theory a
plaintiff pleads, as long as the crux of the complaint is that the plaintiffÂs
attorney did not provide adequate legal representation, the claim is one for
legal malpractice.ÂÂ  Kimleco, 91 S.W.3d at 924 (citing
Greathouse,
982 S.W.2d at 172; Averitt, 89 S.W.3d
at 333 (cause of action based on attorneyÂs alleged failure to perform
professional service is tort rather than breach of contract, regardless of
whether written contract providing for professional services exists between
attorney and client); Goffney,
56 S.W.3d at 191 (finding claims of attorney who failed to prepare for trial
and abandoned client on day of trial to be claims for malpractice instead of
breach of contract)).

Â Â Â Â Â Â Â Â Â Â Â  The breach of contract claim in the IsaacsesÂ petition involves SchleierÂs
alleged failure to follow Âclear and lawful instructions.ÂÂ  Disobeying a clientÂs lawful instruction has been
routinely recited to be a malpractice claim.Â 
McInnis v. Mallia,
No. 14-09-00931-CV, 2011 WLÂ 782229, at *7 (Tex. App.ÂHouston [14th Dist.]
Mar. 8, 2011, pet. denied) (mem. op.); Beck v. Looper, Reed & McGraw, P.C., No. 05-05-00724-CV, 2006 WL 1452108, at *2 (Tex. App.ÂDallas
May 26, 2006, no pet.) (mem. op.); Kimleco, 91
S.W.3d at 923; Zidell v. Bird, 692 S.W.2d 550, 553 (Tex.
App.ÂAustin 1985, no writ).Â  We conclude
that the breach of contract claim was improper fracturing of legal malpractice
and was subject to the two-year statute of limitations.Â  See
Haas v. George, 71 S.W.3d 904, 910 (Tex. App.ÂTexarkana 2002, no pet.)
(emphasizing that breach of contract action arose out of same facts as legal
malpractice claim); Cuyler v. Minns, 60
S.W.3d 209, 216 (Tex. App.ÂHouston [14th Dist.] 2001, pet. denied) (concluding breach of contract claim
that was an impermissible fracturing of a legal malpractice claim); Mullin, 168 S.W.3d at 290 n.1 (claim was
actually a claim for professional negligence where focus of clientsÂ
allegations was negligent drafting or review of documents and failure to timely
inform clients of defects in documents).Â 


Â Â Â Â Â Â Â Â Â Â Â  B.Â Â Â Â Â Â Â  The Negligence Claims Are Malpractice
Claims 

Â Â Â Â Â Â Â Â Â Â Â  The IsaacsesÂ
negligence claims complain of failure to follow instruction in drafting the
sale documents, representing the Ânaturally conflicting interests ofÂ the Isaacses and Bishop, failing to obtain informed consent
regarding the dual representation, failing to timely inform the Isaacses of the dual representation, and failing to secure
written acknowledgement that Schleier was only acting
as attorney for the Isaacses. Â Again, failure to follow client instruction in
this case is a malpractice claim.Â  The
remaining negligence claims involve conflict of interest.Â  

Â Â Â Â Â Â Â Â Â Â Â  As stated in Murphy, Â[c]ourts in this state have
reached different results in deciding whether a conflict-of-interest allegation
against a lawyer gives rise to a claim for professional negligence or some other
cause of action.ÂÂ  Murphy, 241 S.W.3d at 698 (finding the BrocksÂ allegations of
conflict of interest were claims of professional negligence: Â (1) where attorneys continued to represent
co-plaintiff after co-plaintiff was sued by way of counterclaim without written
waiver by the Brocks; (2) where lawyers failed to inform the Brocks of all
material facts when conflicts of interest arose; and (3) where lawyers had the
Brocks sign settlement agreement without advising them of effect of such
release) (citing Deutsch v. Hoover, Bax & Slovacek, L.L.P.,
97 S.W.3d 179, 187, 190 (Tex. App.ÂHouston [14th Dist.] 2002, no pet.); Spera v. Fleming, Hovenkamp & Grayson, P.C., 25 S.W.3d 863, 873 (Tex.
App.ÂHouston [14th Dist.] 2000, no pet.); Archer
v. Med. Protective Co., 197 S.W.3d 422, 427Â28 (Tex. App.ÂAmarillo 2006,
pet. denied)).Â  

Â Â Â Â Â Â Â Â Â Â Â  Generally, where an attorney has
gained some improper benefit from the conflict or improperly failed to disclose
his or her own conflict of interest, other causes of action may proceed.Â  Id. at
696.Â  But, Âcharacterizing conduct as a ÂmisrepresentationÂ
or Âconflict of interestÂ does not alone transform what is really a
professional negligence claim into either a fraud or a breach-of-fiduciary-duty
claim.ÂÂ  Id. at 697 (citing Aiken,
115 S.W.3d at 29; Kimleco,
91 S.W.3d at 924; Ersek,
69 S.W.3d at 270, 274; Goffney,
56 S.W.3d at 193Â94; Greathouse,
982 S.W.2d at 172Â75; Klein, 923
S.W.2d at 49).Â  ÂInstead, to determine
what statute of limitations applies to the claims, we must discern the real
substance of the claims.ÂÂ  Id. Â Â[C]ourts have held
the claim is a professional negligence claim if the claim is really that the
lawyerÂs conflict of interest prevented him from adequately representing the
client.ÂÂ  Id. at 696.

Â Â Â Â Â Â Â Â Â Â Â  We find that because the IsaacsesÂ negligence claims regarding conflicts raise the
issue of whether Schleier Âexercised that degree of
care, skill, and diligence that [lawyers] of ordinary skill and knowledge
commonly possess and exercise,Â the claim is one for legal malpractice.[9]Â  Kimleco, 91 S.W.3d at 924; see Pham[10] v. Nguyen, 763 S.W.2d 467 (Tex. App.ÂHouston [14th Dist.] 1988,
writ denied).Â  

Â Â Â Â Â Â Â Â Â Â Â  C.Â Â Â Â Â Â Â  Breach of Fiduciary Duty and Fraud Claims
Are Malpractice Claims 

Â Â Â Â Â Â Â Â Â Â Â  As to the breach of fiduciary duty
cause of action (which are related to the alleged conflict in the dual
representation), the Isaacses cite to McMahan v. Greenwood, 108 S.W.3d 467,
495Â96 (Tex. App.ÂHouston [14th Dist.] 2003, pet. denied).Â  The allegation in McMahan was that an attorney gave false information to a client
regarding his stock ownership in a company, which resulted in the clientÂs
continued transfer of assets into the company and acquiescence to a settlement
agreement in favor of a partner who was represented by the attorney.Â  The court found some evidence that the
attorney had actual knowledge of alleged wrongful acts.Â  Id. at
493.Â  In this breach of fiduciary duty
case, McMahan reiterated the concept
that an attorney can be liable if there are allegations of self-dealing,
deception, or misrepresentations that go beyond the mere negligence allegations
in a malpractice action, which we find are not present here.Â  Id.
at 495.

Â Â Â Â Â Â Â Â Â Â Â  In helping to decide the true nature
of the IsaacsesÂ claims, our sister court in Kimleco
explained: 

The
focus of breach of fiduciary duty is whether an attorney obtained an improper
benefit from representing a client, while the focus of a legal malpractice
claim is whether an attorney adequately represented a client.Â  See Goffney v. Rabson, 56 S.W.3d
186, 193 (Tex. App.ÂHouston [14th Dist.] 2001, pet. denied) (giving examples of
when a breach of fiduciary duty has occurred); Greathouse v. McConnell, 982 S.W.2d 165, 172 (Tex. App.ÂHouston [1st Dist.]
1998, pet. denied).

Â 

Â Â Â Â Â Â Â Â Â Â Â  The essence of a breach of fiduciary
duty involves the Âintegrity and fidelityÂ of an attorney.Â  Goffney, 56 S.W.3d at 193.Â 
A breach of fiduciary duty occurs when an attorney benefits improperly
from the attorney-client relationship by, among other things, subordinating his
clientÂs interests to his own, retaining the clientÂs funds, using the clientÂs
confidences improperly, taking advantage of the clientÂs trust, engaging in
self-dealing, or making misrepresentations. Â Id.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Unlike a claim for breach of fiduciary
duty, legal malpractice is based on negligence, because such claims arise from
an attorneyÂs alleged failure to exercise ordinary care.Â  Cosgrove
v. Grimes, 774 S.W.2d 662, 665 (Tex. 1989) (op. on rehÂg).Â  A cause of action for legal malpractice arises
from an attorney giving a client bad legal advice or otherwise improperly
representing the client. Â Greathouse, 982
S.W.2d at 172.Â  For example, an attorney
can commit legal malpractice by giving an erroneous legal opinion or erroneous
advice, by failing to give any advice or opinion when legally obliged to do so,
by disobeying a clientÂs lawful instruction, by taking an action when not
instructed by the client to do so, by delaying or failing to handle a matter
entrusted to the attorneyÂs care by the client, or by not using an attorneyÂs
ordinary care in preparing, managing, and presenting litigation that affects
the clientÂs interests.Â  Zidell v. Bird, 692 S.W.2d 550, 553 (Tex.
App.ÂAustin 1985, no writ).

Â 

Kimleco, 91 S.W.3d at 923Â24 (finding breach of
fiduciary duty claims alleging attorney negligently failed to timely designate
qualified expert and negligently misled plaintiffs that another lawsuit was
ready for trial, were really malpractice claims and were barred by the statute
of limitations); see Murphy, 241
S.W.3d at 692Â93.Â  Also, the elements of
actionable fraud are: (1)Â a material representation, (2) that is false,
(3) that the speaker knew was false when made, (4)Â that he made with the
intention that it be acted upon by the other party; (5) that the party acted in
reliance on it, and (6) damages. Â T.O. Stanley Boot Co. v. Bank of El Paso,
847 S.W.2d 218, 222 (Tex. 1992).

Â Â Â Â Â Â Â Â Â Â Â  The IsaacsesÂ
complaints regarding breach of fiduciary duty and constructive fraud concern
the conflict of interest, failure to disclose the dual nature of the
representation and possible consequences, and failing to obtain informed
consent and waiver of any conflicts of interest.Â  These claims do not, Âwithout more, allege
the type of dishonesty or intentional deception that will support a
breach-of-fiduciary-duty claim,Â or demonstrate the element culpability
required to meet the elements of fraud.Â  Murphy, 241 S.W.3d at 699. There is no
allegation or evidence presented that Schleier was
anything other than mistaken in his belief that he was only representing the Isaacses in the transaction.[11]Â  

Â Â Â Â Â Â Â Â Â Â Â  As in Kimleco, we find that the IsaacsesÂ
claims Âcan . . . be characterized as legal malpracticeÂ claims. 91 S.W.3d at
924; Won Pak v. Harris, 313 S.W.3d
454, 456Â58 (Tex. App.ÂDallas 2010, pet. denied) (finding breach of fiduciary
duty, misrepresentations, and aiding and abetting fraud were all malpractice
claims against attorney who drafted formation of entity documents for six
clients because claims centered upon conflicts of interest and failure to
disclose conflicts focused on quality or adequacy of representation). 

Â Â Â Â Â Â Â Â Â Â Â  The IsaacsesÂ
points of error complaining that their claims are not malpractice claims are
overruled.Â  The two-year statute of
limitations applies.Â  

IV.Â Â Â Â Â Â  Tolling
Provisions Asserted Do Not Apply 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Discovery Rule and Fraudulent
Concealment 

Â Â Â Â Â Â Â Â Â Â Â  A plaintiff suffers legal injury
when facts come into play which would authorize seeking a judicial remedy.Â  Apex
Towing Co. v. Tolin, 41 S.W.3d 118, 120 (Tex.
2001). Â Because Texas applies the discovery rule
to legal malpractice claims, a cause of action for legal malpractice accrues
when the nature of the injury is discovered or should have been discovered in
the exercise of reasonable care and diligence.[12]Â  Willis
v. Maverick, 760 S.W.2d 642, 647 (Tex. 1988).Â  

Â Â Â Â Â Â Â Â Â Â Â  The discovery rule applies in cases
of fraud, fraudulent concealment, and in other cases where the nature of the
injury is inherently undiscoverable.Â  Murphy v. Campbell, 964 S.W.2d 265, 270
(Tex. 1997).Â  The doctrine of fraudulent concealment
provides that where a defendant is under a duty to make a disclosure, but
fraudulently conceals the existence of a cause of action from the party to whom
it belongs, the defendant is estopped from relying on
the defense of limitations until the party learns of the right of action or
should have learned thereof through the exercise of reasonable diligence.Â 
Trousdale v. Henry, 261 S.W.3d 221, 234 (Tex. App.ÂHouston [14th
Dist.] 2008, pet. denied). Â The Isaacses
argue that their claims were fraudulently concealed by Schleier
and should not have been discovered until his testimony agreeing to the dual
representation.Â  

Â Â Â Â Â Â Â Â Â Â Â  However, the estoppel
effect of fraudulent concealment ends when a party learns of facts, conditions,
or circumstances which would cause a reasonably prudent person to make inquiry,
which, if pursued, would lead to discovery of the concealed cause of action. Â Id.
Â Schleier
and the firm claim that the Isaacses knew of the
allegations of the dual representation in 2002.Â 
Because Schleier and the firm moved for
summary judgment on the affirmative defense of limitations and the Isaacses assert the discovery rule, the Isaacses
must also negate the application of the discovery rule.Â  RhoneÂPoulenc, Inc. v. Steel, 997 S.W.2d 217, 223
(Tex. 1999).

Â Â Â Â Â Â Â Â Â Â Â  In John IsaacsÂ June 15, 2004,
deposition, he acknowledged that Schleier represented
both parties in the transaction.Â  While Schleier sought to represent the Isaacses
in initiating foreclosure proceedings, a letter was sent from BishopÂs attorney
to Schleier on September 30, 2002, pointing out the
dual representation and asking for SchleierÂs
withdrawal. Â With respect to this letter,
John Isaacs testified to the following on September 3, 2009:

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  And
part of that letter says that, Mr. Schleier, you
shouldnÂt be handling this for Mr. Isaacs because you were handling this
transaction for both of them, Mr. Bishop and Mr. Isaacs, youÂve got a conflict
of interest.Â  Do you remember that part
of the letter?

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Oh,
yes. 

Â 

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  Okay.Â  So you knew that as of the time of that
letter, BishopÂs claiming, wait a minute, Rob Schleier,
you did something wrong, youÂre representing both of us? 

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Well,
I didnÂt -- I didnÂt think he done anything wrong.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  Yes,
sir, but -- 

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  I
donÂt think he really -- whatever, you know.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  Right,
but you knew that Mr. Craig was making that claim on behalf of Mr. Bishop, that
Mr. Schleier had done something wrong in representing
both of you and he shouldnÂt now be representing just you?

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Yes,
sir. 

Â 

The
evidence that John Isaacs knew of the allegation of dual representation around
September 30, 2002, was corroborated later in this deposition, and in SchleierÂs written response to the allegation, which copied
the Isaacses on October 2, 2002.Â  By the time Bishop filed suit shortly
thereafter, the Isaacses had hired Clifton ÂScrappyÂ
Holmes to represent them.Â  Schleier and the firm argue that the Isaacses,
through reasonable diligence, should have known of the nature of the dual
representation by this time.[13] 

Â Â Â Â Â Â Â Â Â Â Â  The Isaacses
argue that this evidence does not establish, as a matter of law, that their
cause of action accrued in 2002.Â  They
point out that even as of August 5, 2004, Schleier
testified Âmy client was Johnny Isaacs.Â 
It was not Chuck BishopÂs [sic].Â Â SchleierÂs belief
stemmed from BishopÂs representation that he had another attorney who would
review the sale documents. Â Schleier continued to claim, even as of this date, that he
was only representing the Isaacses in the transaction. Â Because Schleier
continued to deny the nature of the dual representation until his trial
testimony, the Isaacses contend that a fact question
exists as to when the cause of action accrued.Â 


Â Â Â Â Â Â Â Â Â Â Â  Again, Schleier
and the firm must prove Âas a matter of law that there is no genuine issue of
fact about when the plaintiff discovered or should have discovered the nature
of the injury.ÂÂ  Sullivan v. Bickel & Brewer, 943 S.W.2d 477, 481 (Tex.
App.ÂDallas 1995, writ denied) (citing Am.
Med. Elecs.,
Inc. v. Korn, 819 S.W.2d 573, 576 (Tex.
App.ÂDallas 1991, writ denied)). Â If they
Âcannot do so, a fact question exists about when the limitations period began
to accrue.ÂÂ  Id. (citing Clade v. Larsen, 838 S.W.2d 277, 282 (Tex.
App.ÂDallas 1992, writ denied)). 

Â Â Â Â Â Â Â Â Â Â Â  Here, we find that Schleier has met that burden.Â  ÂDiscovery occurs when a plaintiff has
knowledge of such facts, conditions, or circumstances as would cause a
reasonably prudent person to make an inquiry that would lead to discovery of
the cause of action.ÂÂ  Trousdale, 261 S.W.3d at 234.Â  At a minimum, the Isaacses
knew of the facts and the complaint of dual representation in October 2002 when
it was asserted by Bishop in his petition.Â 
Knowledge of these facts should have prompted inquiry, and the Isaacses should have known through reasonable diligence
(i.e., asking their attorney to research the issue), that the allegations made
in the Bishop petition, if true, would give rise to legal injury.Â  Consequently, we do not find that the
discovery rule or fraudulent concealment applies.Â  

Â Â Â Â Â Â Â Â Â Â Â  B.Â Â Â Â Â Â Â  The Hughes
Tolling Provision Is Inapplicable 

Â Â Â Â Â Â Â Â Â Â Â  The Hughes tolling provision provides that in certain types of legal
malpractice actions, the statute of limitations may be tolled until the
malpractice litigation is final.Â  Mullin, 168 S.W.3d at 291 (citing Apex Towing Co. v. Tolin,
41 S.W.3d 118, 119 (Tex. 2001)).Â  Hughes decided the Âproper application
of the statute of limitations in a legal malpractice case when the attorney
allegedly commits malpractice while providing legal services in the prosecution
or defense of a claim which results in litigation.Â Â Hughes v. Mahaney
& Higgins, 821 S.W.2d 154, 155 (Tex. 1991).Â  Because the attorneyÂs malpractice during
litigation could force his client to take inconsistent postures, the court
allowed for a tolling of the statute of limitations on the malpractice action
until all appeals in the underlying claim were exhausted.Â  Id. at
156Â57.Â  The reasoning for the tolling is
that the outcome of the malpractice suit depends on the outcome of the first
litigation, since injury or damage is an element of the claim for legal
malpractice.Â  Id at 157.Â  As with the
discovery rule, the defendant moving for summary judgment bears the burden of
showing that the Hughes rule has not
tolled limitations. Â Mullin, 168 S.W.3d at 291 (citing Nunez v. Caldarola, 56 S.W.3d 812, 815
(Tex. App.ÂCorpus Christi 2001, no pet.)).Â 
The Isaacses argue that because the first Isaacs case was not resolved by this
Court until after the filing of their petition, the statute of limitations
should be tolled. Â We disagree. 

Â Â Â Â Â Â Â Â Â Â Â  Several cases have held that the Hughes tolling provision does not apply
to attorney malpractice claims based on transactional work.Â  Mullin,
168 S.W.3d 288, 292Â93 (ÂBecause the negligent drafting and/or review of the
agreements . . . , if any, is not attorney malpractice committed during Âthe
prosecution or defense of a claim that results in litigation,Â the alleged
malpractice in this case is not within a category of legal malpractice cases
encompassed within the Hughes definition,
and, thus, the Hughes rule does not
apply.Â).Â  Yet, the Isaacses
argue that the malpractice was the misrepresentation of the dual
representation, and that because the misrepresentation was revealed at trial,
the Hughes tolling provision
applies.Â  They rely heavily on Gulf Coast Investment Corp. v. Brown,
821 S.W.2d 159, 160 (Tex. 1991).Â  In that
case, an attorneyÂs notice of foreclosure was not properly drafted.Â  Plaintiff asserted wrongful foreclosure
against the Company who hired the attorney, and won.Â  Thereafter, the Company sued the attorney for
malpractice arising from the deficient draft.Â 
The court in Gulf held that
malpractice occurring outside of litigation can toll the statute of limitations
where it resulted Ânot in an appeal on the underlying claim, but in a wrongful
foreclosure action by a third-party against the client.ÂÂ  The rationale in Hughes was expanded because the CompanyÂs position in the first
suit in defending against wrongful foreclosure would be inconsistent with the
malpractice claim alleging that the notice was deficient.Â  

Â Â Â Â Â Â Â Â Â Â Â  Again, Hughes requires that the attorney allegedly commits malpractice while providing legal services in the
prosecution or defense of a claim which results in litigation. Â Hughes
assumes the attorney at trial is representing the client in litigation at
the time that the malpractice is committed.Â 
Here, Schleier and the firm no longer
represented the Isaacses at trial.Â  Further, the malpractice must be committed in
the prosecution or defense of the claim which results in litigation.Â  The misguided advice that there was no dual
representation was committed prior to litigation as evidenced by the September
2002 letter to BishopÂs attorney.Â  

Â Â Â Â Â Â Â Â Â Â Â  Distinguishing Gulf, it is unclear how SchleierÂs
admission would require the Isaacses to take inconsistent
positions.Â  In order for Bishop to be
successful against the Isaacses on this claim of
fraud, he would have to prove that the Isaacses knew SchleierÂs denial of dual representation was false.Â  The Isaacses were
not attorneys and were not charged with the knowledge of the rules of conduct
for lawyers; instead, they admittedly relied on Schleier
to make such a determination.Â  Even when Schleier belatedly announced that he represented both
parties, the Isaacses could have continued to
maintain that they had no knowledge of that and could not be charged with such
knowledge when Schleier had consistently denied such
dual representation.Â  The Isaacses allege that by their ignorance of SchleierÂs attorney-client relationship with both parties,
they were harmed.Â  That fact alone did
not cause injury to the Isaacses.Â  A finding of an attorney-client relationship
between Bishop and Schleier was important to Bishop
because he could not have recovered for legal malpractice otherwise; for the
same reason, it was important to Schleier.Â  The Isaacses were
not required to take any position on that issue in the trial with Bishop, and
such a finding in itself did not have a bearing on the IsaacsesÂ
liability to Bishop.Â  We do not believe
the Isaacses were forced into taking inconsistent
positions, and the Hughes tolling
provision does not apply. Â This last
dispositive point of error is overruled. 

Â Â Â Â Â Â Â Â Â Â Â  We find that the IsaacsesÂ
claims were subject to the two-year malpractice statute of limitations, which
began to accrue in October 2002 with the filing of BishopÂs petition alleging
dual representation.Â  Because the Isaacses did not file suit in this case until 2005, and no
tolling provisions asserted applied, we conclude that the IsaacsesÂ
claims were barred.Â  Therefore, the trial
court properly granted the take-nothing summary judgment. 

V.Â Â Â Â Â Â Â  Conclusion


Â Â Â Â Â Â Â Â Â Â Â  We affirm the trial courtÂs judgment. 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Jack
Carter

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Date
Submitted:Â Â Â Â Â Â Â Â Â  October 19, 2011

Date
Decided:Â Â Â Â Â Â Â Â Â Â Â Â  December 7, 2011

Â 











[1]Results
of a survey indicated Âsubstantially more of the Hallsville Race Track was on
the [adjacent ownerÂs] property than John Isaacs had previously represented to Bishop.Â


Â 





[2]Bishop
alleged Schleier knew of title defects, failed to
disclose them, and failed to explain the importance of the title defects or
need for title insurance.Â  





[3]ÂDuring
the course of the litigation, because Bishop could not get alternative financing,
Bishop created the corporation Hallsville Dragway,
Inc. (hereinafter HDI), and transferred the track into it. Â HDI later filed for bankruptcy protection, and
the bankruptcy court ordered the original note to be replaced with a ÂReplacement
NoteÂ containing less severe terms.ÂÂ  Isaacs, 249 S.W.3d at 104. 

Â 





[4]Schleier and the firm argue that to the extent this is a
suit for contribution, it is barred.Â  The
Isaacses say that this is not a claim for
contribution.Â Â  





[5]In
SchleierÂs March 3, 2005, trial testimony, he denied
that the demand feature was specifically put in.Â  Instead, he claimed that the feature was
added because Âmy forms had changed since the time of the Ken Hall transaction,
and, and my commercial note forms have automatically a demand feature in them.Â






[6]The
Isaacses also argued as a separate point of error
that the trial court erred in failing to strike SchleierÂs
affidavit as an improper expert opinion because it was unreliable with regard
to the conclusion that Âevents occurring in September of 2002 could be evidence
of an alleged fraud-in-the-inducement which was completed in May of 2002.ÂÂ  





[7]The
Isaacses admitted that the on-demand feature of the
note was never exercised. 

Â 





[8]We note that the
IsaacsesÂ brief describes the (entire) litigation as
a legal malpractice action.Â  





[9]Also
of concern are the elements of proximate cause and damages.Â  This Court is puzzled as to how SchleierÂs dual representation, and alleged late disclosure
of the dual representation is a proximate cause of any damage to the Isaacses.Â  

Â 





[10]This
case is misnamed.Â  It should be Tinh v. Nguyen.





[11]While
the ÂTexas courts do not allow plaintiffs to convert what are really negligence
claims into claims for fraud,Â they Âhave allowed clients to assert fraud
claims against lawyers when the specific allegations of fraud centered on the
fees charged for the lawyersÂ services.Â Â Murphy,
241 S.W.3d at 693 (claim that lawyers gave material false and misleading
information inducing plaintiffÂs settlement of claims due to defendantÂs
counterclaim against co-plaintiff was a negligence claim) (citing T.O. Stanley Boot Co., 847 S.W.2d at 222;
Sullivan v. Bickel & Brewer, 943
S.W.2d 477, 481 (Tex. App.ÂDallas 1995, writ denied)). Â There is no such complaint here. 

Â 





[12]Although
we previously explained that the Harrison County claims were separately
asserted against the Isaacses and Schleier,
and it has not been shown how the admission of dual representation harmed the Isaacses considering BishopÂs claims and the jury charge in
the Harrison County case, we assume that some injury occurred for the purposes
of this exercise. 





[13]In
an amended affidavit, John expounded his answer in the 2004 deposition that he
knew Schleier was also representing Bishop. Â He says, 

Â 

Only
at the time of the final arguments, when the Judge was reading the Trial
CourtÂs Charge to the jury prior to their deliberations, did by [sic] wife
and I discover that the sudden and abrupt change in the testimony by Attorney Schleier set forth herein (admitting, for the very first
time, that the dividing of the legal fees alone was sufficient evidence to
establish an attorney-client relationship between himself and Bishop, while he
was also acting as our attorney in the real estate transaction) would result in
a substantial, sudden, and certainly adverse Âduty to discloseÂ instruction to
the jury which, in my opinion at the time and in the opinion of my trial counsel,
dramatically altered the exposure my wife and I had to the claims of
Âfraud-in-the-inducement.Â