# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00545-CV

**Blue Cross Blue Shield of Texas, Appellant**

**v.**

**James J. Juneau, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
## NO. GN103764, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## O P I N I O N

This appeal arises from a suit by appellant Blue Cross Blue Shield of Texas ("Blue Cross") against appellee James J. Juneau, an arbitrator who, as a member of an arbitration panel, rendered an award in favor of HealthCor Liquidation Trust ("HealthCor") and against Blue Cross. Blue Cross brought suit to vacate the award, naming HealthCor and the individual arbitrators, including Juneau, as defendants. HealthCor removed the action to federal district court, which severed the cause of action against HealthCor and remanded the suit against the arbitrators to the state district court. Blue Cross nonsuited the other arbitrators and supplemented its original petition, alleging that Juneau failed to disclose a previous relationship that Blue Cross contends affected the arbitration process. Juneau, the only remaining defendant, filed a plea to the jurisdiction, which the district court granted. We will affirm the district court's order of dismissal.

BACKGROUND

Juneau and two other arbitrators associated with the American Arbitration Association ("AAA") were appointed to arbitrate a dispute between Blue Cross and HealthCor. In 1999 HealthCor had declared bankruptcy, and the various entities comprising HealthCor were consolidated into the liquidation trust. HealthCor then filed an adversary proceeding in bankruptcy court against Blue Cross, alleging that Blue Cross had failed to pay for contracted medical services and supplies rendered to patients insured by Blue Cross. After the bankruptcy court dismissed the case, HealthCor moved for arbitration against Blue Cross before an AAA panel, as provided by the Blue Cross-HealthCor contract. The arbitration panel conducted a full evidentiary hearing and unanimously awarded HealthCor damages against Blue Cross.

Blue Cross filed this suit against HealthCor and the arbitrators in district court, seeking to vacate or modify the award. Blue Cross alleged that the award was the result of "gross mistake" committed by the arbitration panel. HealthCor removed the case to federal district court, where HealthCor's claim to modify or vacate the award was severed and transferred to bankruptcy court. The federal district court remanded Blue Cross's claims against the individual arbitrators, citing no federal jurisdiction. *Blue Cross Blue Shield v. HealthCor Liquidation Trust*, No. A-01-CA-849-SS (W.D. Tex. Feb. 12, 2002) (final order of transfer and remand). The bankruptcy court initially upheld the arbitration award. *See Herzog v. Blue Cross Blue Shield of Tex., Inc.* (*In re HealthCor Holdings, Inc.*), No. 01-3685 (Bankr. N.D. Tex. Mar. 13, 2002) (opinion on motions for summary judgment). However, after deposing Juneau on April 3, 2002, Blue Cross petitioned the

2

bankruptcy court to alter its judgment; the court granted a hearing "solely on [Blue Cross's] defensive issue of possible evident partiality of the arbitrator." *Id.*, No. 01-3685 (Bankr. N.D. Tex. May 10, 2002) (order on Blue Cross's motion to alter judgment, granting new trial on issue of arbitrator partiality); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(2)(A) (West Supp. 2003). Before any hearing, HealthCor and Blue Cross settled their dispute. Blue Cross then nonsuited two arbitrators in the state-court action, leaving only Juneau. By a supplemental petition, Blue Cross alleged that Juneau had failed to disclose a prior relationship with a HealthCor attorney involved in the arbitration process. Blue Cross argued that, had it known of the relationship before arbitration began, Blue Cross would have sought Juneau's disqualification.

Blue Cross's allegations against Juneau stem from his prior relationship with Jeffrey Seckel, an attorney employed by HealthCor. The parties dispute the facts surrounding Blue Cross's discovery of the relationship. As part of Juneau's acceptance of appointment to arbitrate, Juneau indicated in writing, before the arbitration process began, that he had nothing to disclose that might hinder his impartiality.[1] After the arbitration panel rendered its decision and Blue Cross's attempts

---

[1] The "Notice of Appointment" stated:

It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties or their counsel, direct or indirect, whether financial, professional, social or of any other kind. If any relationships arise during the course of the arbitration or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed. Any doubt should be resolved in favor of disclosure. If you are aware of such a relationship, please describe it below. The AAA will call the facts to the attention of the parties' counsel.

3

to vacate the panel's award failed, Blue Cross deposed Juneau. Juneau testified that apart from working at the same Dallas firm as Seckel for a period during the 1980s, Juneau had no association with Seckel. Juneau stated that while at the firm the two were associates in different sections, located on different floors, and did not work together. Juneau testified that he could not recall whether Seckel was in the same associate class, but that he did not have regular contact with Seckel. This relationship, Juneau argues, was not something that required disclosure because it would not affect his impartiality.

Juneau alleges that at the time he made the written statement indicating that he had nothing to disclose, Seckel was not representing HealthCor, and none of the arbitrators knew of Seckel's participation. Juneau states that after he discovered that Seckel was involved with the case, he made an "immediate verbal disclosure [of the relationship] . . . to counsel for all parties" during a prearbitration teleconference. Juneau alleges that after the disclosure, Blue Cross offered no objection to his remaining as an arbitrator. Blue Cross rejoins that Juneau breached his duty to disclose "before he became an arbitrator for HealthCor" and that no disclosure occurred during the teleconference. Juneau filed a plea to the jurisdiction, alleging that Blue Cross's claims were barred by the doctrine of "judicial immunity." The district court agreed and dismissed Blue Cross's claims against Juneau for want of subject-matter jurisdiction. Blue Cross appeals.

**STANDARD OF REVIEW**

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Rylander v. Caldwell*, 23 S.W.3d 132, 135 (Tex. App.—Austin 2000, no pet.) (citing *Texas Ass'n*

4

*of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)). "A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action." *Id.* (citing *Texas State Employees Union/CWA Local 6184 v. Texas Workforce Comm'n*, 16 S.W.3d 61, 65 (Tex. App.—Austin 2000, no pet.)). In order to prevail, the party asserting the plea to the jurisdiction must show that even if all the allegations in the plaintiff's pleadings are taken as true, there is an incurable jurisdictional defect apparent from the face of the pleadings, rendering it impossible for the plaintiff's petition to confer jurisdiction on the trial court. *See id.*

Because subject-matter jurisdiction presents a question of law, we review the district court's decision *de novo*. *Id.* In reviewing a trial court's ruling on a plea to the jurisdiction, we do not look at the merits of the case; rather, we "construe the pleadings in favor of the plaintiff," look to the pleader's intent, and accept the pleadings' factual allegations as true. *Id.* "The truth of the plaintiff's allegations is at issue only if the defendant pleads and proves that the allegations were fraudulently made to confer jurisdiction on the court." *Id.* Further, "a court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland ISD v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

## DISCUSSION

By its only issue, Blue Cross argues that the district court erred in sustaining Juneau's plea to the jurisdiction and dismissing the case. Specifically, Blue Cross argues that if there is arbitral immunity, an issue not yet decided by Texas courts, then this Court should adopt a functional

approach instead of granting arbitrators absolute immunity. Blue Cross posits that under a functional approach, Juneau would not be immune from this cause of action. Juneau contends that the district court lacked subject-matter jurisdiction because: (1) there existed no justiciable case or controversy between Blue Cross and the individual arbitrators and (2) the doctrine of arbitral immunity barred Blue Cross's claims.

### *Arbitral Immunity*

The district court granted Juneau's plea to the jurisdiction based on arbitral immunity, which is a form of immunity yet to be recognized by Texas courts. This immunity, Juneau argues, protects arbitrators from suit for actions taken during the course and scope of an arbitration, and therefore the district court lacked subject-matter jurisdiction to hear the case. Blue Cross argues that although there may be immunity for arbitrators, a functional approach instead of an absolute approach to immunity should be followed. By applying the functional approach, Blue Cross contends that Juneau would not be immune for his failure to disclose his relationship with Seckel.

Arbitral immunity is derived from judicial immunity, which establishes that judges are absolutely immune from personal liability for judicial acts that are not performed in clear absence of all jurisdiction, regardless of how erroneous the act, or how evil the motive. *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). Persons whose responsibilities are "functionally comparable" to those of a judge are likewise immune from liability. *Butz v. Economu*, 438 U.S. 478, 510-13 (1978) (immunity extended to executive-branch officials). In *Butz,* the Court identified a nonexhaustive list of factors to determine whether an agency and its members performed "quasi-judicial" functions entitling them to immunity:

6

1. the need to assure that the individual can perform his functions without harassment or intimidation;

2. the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;

3. insulation from political influence;

4. the importance of precedence;

5. the adversary nature of the process; and

6. the correctability of error on appeal.

*Id.* at 512. The rationale behind the Supreme Court's decision is that the independence necessary for principled and fearless decision making can best be preserved by protecting these persons from bias or intimidation caused by the fear of a lawsuit arising out of the exercise of official functions within their jurisdiction. *Id.* at 508-11. The Court stated that immunity is not extended to individuals because of their particular location in government but because of the special nature of their responsibilities. *Id.* at 511.

The Eighth Circuit Court of Appeals has stated that "[l]ike judicial and quasi-judicial immunity, arbitral immunity is necessary to protect decisionmakers from undue influence, and the decision-making process from attack by dissatisfied litigants." *Olson v. National Ass'n of Sec. Dealers*, 85 F.3d 381, 382 (8th Cir. 1996). In *Olson*, Olson sued an arbitrator and an arbitration association for the association's appointment of an arbitrator who had an ongoing business relationship with Olson's employer, and adversary. *Id.* The *Olson* court held that "[b]ecause an arbitrator's role is functionally equivalent to a judge's role, [federal] courts of appeals have

7

uniformly extended judicial and quasi-judicial immunity to arbitrators."[2]  *Id.*  Additionally, the court

concluded that such immunity extended to the arbitration association.  *Id.*  On appeal, Olson argued

that the arbitration association's appointment of the arbitrator occurred *before* the decision-making

process began and thus was not within the scope of the arbitral process.  *Id*. at 383.  The court,

however, held that the appointment of arbitrators was a part of the arbitral process.  *Id*.

In *Corey v. New York Stock Exchange*, the Sixth Circuit Court of Appeals held that

an arbitral organization, acting through its arbitrators, was immune from suit.  691 F.2d 1205 (6th

Cir. 1982); *see also Tamari v. Conrad*, 552 F.2d 778, 780 (7th Cir. 1977).  The *Corey* court

recognized the existence of "certain persons whose special functions require a full exemption from

liability for acts committed within the scope of their duties," and that the arbitrators' duties were

functionally equivalent to those of judges.  *Corey*, 691 F.2d at 1209.  The court opined that sufficient

safeguards exist to protect the participants and the integrity of the arbitration proceedings, including:

(1) the proceedings resembled adversarial judicial proceedings with a right to counsel and discovery,

(2) the right of judicial review by a district court with the option of vacating or modifying the award,

and (3) the arbitration proceeding was a voluntary means of dispute resolution.  *Id*.  "In light of these

safeguards, the risk of a wrongful act by the arbitrators is outweighed by the need for preserving the

---

[2]  The *Olson* court relied on the following cases: *Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990); *Wasyl, Inc. v. First Boston Corp.*, 813 F.2d 1579, 1582 (9th Cir. 1987); *Ozark Air Lines, Inc. v. National Mediation Bd.*, 797 F.2d 557, 563-64 (8th Cir. 1986); *Shrader v. National Ass'n of Sec. Dealers, Inc.*, 855 F.Supp. 122, 123-24 (E.D.N.C. 1994), *aff'd per curiam*, 54 F.3d 774 (4th Cir. 1995) (unpublished table decision).  *Olson v. National Ass'n of Sec. Dealers*, 85 F.3d 381, 382 (8th Cir. 1996).  To this list we add:  *New England Cleaning Servs. v. American Arbitration Ass'n*, 199 F.3d 542, 545 (1st Cir. 1999); *Hawkins v. National Ass'n of Sec. Dealers Inc.*, 149 F.3d 330, 332 (5th Cir. 1998).

independence of their decision-making." *Id*. at 1210. Various state courts have similarly held that arbitrators, acting in their official capacity, possess a quasi-judicial immunity.[3]

In support of its argument for a "functional approach" to immunity, Blue Cross cites *Forrester v. White*, 484 U.S. 219 (1988). However, we believe that the rationale supporting judicial immunity offered by the Supreme Court in *Forrester* supports Juneau's argument. In *Forrester*, Judge White, an Illinois state judge who had the ancillary duty of hiring probation officers, was sued for discrimination under the Civil Rights Acts of 1871, after terminating a probation officer's position. *Id*. at 221 (citing 42 U.S.C.A. § 1983 (West 1994)). On appeal, Judge White argued that his actions were protected by judicial immunity, but the Supreme Court disagreed, holding that Judge White's employment action was not a protected judicial function. *Id*. at 222, 230. The Court opined that "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Id*. at 227. The Court stated that Judge White's decision was an "administrative" decision and not "judicial or adjudicative." *Id*. at 229. Judge White's action in *Forrester* is clearly distinguishable from Juneau's alleged inaction. Juneau's disclosure requirement was not an administrative act independent of the arbitration proceeding. Rather, Juneau's disclosure requirement was a function of his position as an arbitrator. *See Olson*, 85 F.3d at 383 (failure to

---

[3] *See Feichtinger v. Conant*, 893 P.2d 1266, 1267 (Alaska 1995); *L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 376 (Minn. 1989) (suit against arbitrator for failure to disclose prior business or social contacts precluded by arbitral immunity); *Garcia v. Wayne Homes, LLC*, 2002 Ohio App. LEXIS 1917, at *61-63 (Ohio Ct. App. 2002); *Higdon v. Construction Arbitration Assocs., Ltd.*, 71 S.W.3d 131, 132 (Ky. Ct. App. 2002); *Boraks v. American Arbitration Ass'n*, 517 N.W.2d 771, 772 (Mich. Ct. App. 1994); *see also Barr v. Tigerman*, 189 Cal. Rptr. 834, 839 (Cal. Ct. App. 1983) (arbitral immunity protects arbitrators from civil liability for actions taken in arbitrator's quasi-judicial capacity but not for arbitrator's failure to comply with arbitration contract).

9

disclose relationship before decision-making process began was part of arbitration administration and protected by arbitral immunity). Applying the reasoning in *Forrester*, Juneau is immune from suit because the disclosure requirement was directly related to his function as an arbitrator. As the Supreme Court stated in *Forrester*, "Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review." *Id*. at 227. The civil-practice-and-remedies code provides Blue Cross with such a review mechanism. Tex. Civ. Prac. & Rem. Code Ann. § 171.098 (West Supp. 2003) (Texas Arbitration Act permits appeals of arbitration award in limited circumstances).

We believe that Texas public policy favors the extension of immunity to arbitrators. Independence of judgment and freedom from the threat of lawsuits initiated by dissatisfied parties are essential to the success of the arbitration process. Because Texas encourages arbitration and arbitrators are essential actors in furtherance of that policy, it is appropriate that immunity be extended to arbitrators for acts within the scope of their duties. *See Prudential Sec., Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995); *see also New England Cleaning Servs. v. American Arbitration Ass'n*, 199 F.3d 542, 546 (1st Cir. 1999) ("[r]eluctance by the AAA or similar organization to arrange arbitrations would impede the implementation of federal policy favoring arbitration of labor disputes"). The extension of immunity to arbitrators pursuant to the parties' private arbitration agreement is especially compelling because arbitration is the means the parties selected for disposing of controversies between them. *Corey*, 691 F.2d at 1211. By immunizing arbitrators and their decisions from collateral attacks, the parties' contractual choice for arbitration is respected, yet the arbitrators are protected from suits by disgruntled parties. Arbitrators have no interest in the outcome of the dispute and should not be compelled to become parties to it. *Tamari*, 552 F.2d at

10

781. An aggrieved party alleging a due-process violation in the conduct of the proceedings, fraud, misconduct, a violation of public policy, or lack of jurisdiction by arbitrators may pursue remedies against the "real" adversary through the appeal process. *Corey*, 691 F.2d at 1211. We agree with the reasoning of the Minnesota Supreme Court in finding that arbitrators should be clothed with immunity:

> Failure to disclose possible conflicts of interest creates at the least an impression of bias. An impression of bias contaminates the decision making process when neutrality is essential and is not condoned by this court. Nevertheless, we decline to permit a civil suit against the arbitrator for failure to disclose prior business or social contacts because of our policy of encouraging arbitration and of protecting the independence of the decision made. Permitting civil suit for lapse in disclosure would chill the willingness of arbitrators to serve because of the difficulty of remembering all contacts, however remote, with parties to the arbitration.

*L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 377 (Minn. 1989).

For these reasons we hold that arbitral immunity is essential to the maintenance of arbitration by contractual agreement as a viable alternative to the judicial process for the settlement of controversies and apply the doctrine here. We overrule Blue Cross's issue.

### *Preemption*

Even if Juneau is not protected by the doctrine of arbitral immunity, Blue Cross's appeal still fails. In seeking a reversal of the district court's grant of Juneau's plea to the jurisdiction, Blue Cross is attempting to circumvent the arbitration act and indirectly attack the panel's award. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.088 (West Supp. 2003). In its brief, Blue Cross states that it is not seeking to vacate or modify the arbitration award but desires "to recover . . . the

11

attorney's fees and expenses incurred" as the result of discovering and briefing Juneau's "nondisclosure/misrepresentation." However, in its original petition, Blue Cross sought to vacate or modify the award. *See id.* Blue Cross's original petition alleged that the panel's award was "arbitrary and capricious, unsupported by the evidence, and exhibit[ed] a manifest disregard for both the law and facts . . . [and] appears to be the result of bias or prejudice on behalf of the arbitrators." In a supplemental petition, Blue Cross argued that Juneau engaged in intentional or negligent misrepresentation and that the award should be modified or vacated. Additionally, both petitions requested "such other relief, both legal and equitable, to which [Blue Cross] may show itself justly entitled."[4]

Arbitration is generally a contractual proceeding by which the parties to a controversy, in order to obtain a speedy and inexpensive *final disposition* of the disputed matter, select arbitrators or judges of their own choice, and by consent submit the controversy to these arbitrators for determination. *Manes v. Dallas Baptist Coll.*, 638 S.W.2d 143, 145 (Tex. App.—Dallas 1982, writ ref'd n.r.e.). The parties' contract provided for the arbitration of their dispute. Texas law favors the arbitration of disputes. *Marshall*, 909 S.W.2d at 898; *Brazoria County v. Knutson*, 176 S.W.2d 740, 743 (Tex. 1943). An arbitration panel's award is entitled to great deference in a court of law, lest disappointed litigants seek to overturn every unfavorable arbitration award. *Daniewicz v. Thermo Instrument Sys., Inc.*, 992 S.W.2d 713, 716 (Tex. App.—Austin 1999, pet. denied). Accordingly, every reasonable presumption will be indulged to uphold the arbitration proceeding. *Id.*

---

[4] At oral argument, Blue Cross argued that such general prayer permits its suit for damages associated with Juneau's nondisclosure.

12

Because HealthCor sought arbitration of its dispute with Blue Cross pursuant to the arbitration clause in their contract, Blue Cross's action is governed by the Texas Arbitration Act.[5] Tex. Civ. Prac. & Rem. Code Ann. § 171.001; *L.H. Lacy Co. v. City of Lubbock*, 559 S.W.2d 348, 351 (Tex. 1977). The act provides that an appeal from a judgment can only be taken in five instances: (1) denial of an application to compel arbitration; (2) granting an application to stay arbitration; (3) confirming or denying confirmation of an award; (4) modifying or correcting an award; or (5) vacating an award without directing a rehearing. Tex. Civ. Prac. & Rem. Code Ann. § 171.098. Section 171.088 states in relevant part:

(a) On application of a party, the court shall vacate an award if:

(1) the award was obtained by corruption, fraud, or other undue means;

(2) the rights of a party were prejudiced by:

(A) evident partiality by an arbitrator appointed as a neutral arbitrator;

(B) corruption in an arbitrator; or

(C) misconduct or wilful misbehavior of an arbitrator;

---

[5] Two coexisting schemes govern arbitration in Texas: common-law arbitration and the Texas Arbitration Act. Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001-.098 (West Supp. 2003); *Lee v. El Paso County*, 965 S.W.2d 668, 671-72 (Tex. App.—El Paso 1998, pet. denied) ("Absent an allegation of a statutory or common law ground to vacate or modify an arbitration award, a reviewing court lacks jurisdiction to review the arbitrator's decision."). However, the legislature did not intend for the act to supplant common-law arbitration; indeed, if an arbitration award is not within the requirements of the act, the award may still be valid if it complies with common-law arbitration requirements. *L.H. Lacy Co. v. City of Lubbock*, 559 S.W.2d 348, 351 (Tex. 1977). Under the common law, the procedures are more restrictive. The common law provides for three instances in which an arbitration award can be overturned: evidence of (1) fraud, (2) mistake, or (3) misconduct. *Id*. at 352.

(3) the arbitrators:

    (A) exceeded their powers;

    (B) refused to postpone the hearing after a showing of sufficient cause for the postponement;

    (C) refused to hear evidence material to the controversy; or

    (D) conducted the hearing, contrary to [various sections in the Act]; or

(4) there was no agreement to arbitrate, the issue was not adversely determined in a proceeding under Subchapter B, and the party did not participate in the arbitration hearing without raising the objection.

*Id*. § 171.088. Absent a statutory ground to vacate or modify an arbitration award, a reviewing court lacks jurisdiction to review other complaints about the arbitration, including the sufficiency of the evidence supporting the award. *J.J. Gregory Gourmet Servs., Inc. v. Antone's Imp. Co.*, 927 S.W.2d 31, 33 (Tex. App.—Houston [1st Dist.] 1995, no writ); *Powell v. Gulf Coast Carriers, Inc.*, 872 S.W.2d 22, 24 (Tex. App.—Houston [14th Dist.] 1994, no writ).

The Act's provisions afforded Blue Cross a sufficient mechanism to vacate the arbitration award on the theory that Juneau's impartiality was compromised. An award under the Act may be vacated if a party establishes "evident partiality" on the part of an arbitrator.[6] Tex. Civ.

---

[6] In *Mariner Financial*, the supreme court stated that: "a neutral arbitrator . . . exhibits evident partiality . . . if the arbitrator does not disclose facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality." *Mariner Fin. Group v. H.G. Bossley*, 79 S.W.3d 30, 32 (Tex. 2002) (quoting *Burlington N. R.R. Co. v. TUCO, Inc.*, 960 S.W.2d 629, 630 (Tex. 1997)). Further, the court noted that under this test, "the consequences for nondisclosure are directly tied to the materiality of the unrevealed information." *Id*. However, the court in *TUCO* held that "a neutral arbitrator need not disclose relationships or connections that are trivial," but the arbitrator should make such disclosure. *TUCO*, 960 S.W.2d at 637. A similar standard is recognized under the Federal Arbitration Act. *International Bank of Commerce-Brownsville v. International*

Prac. & Rem. Code Ann. § 171.088(a)(2)(A); *Mariner Fin. Group, Inc. v. H.G. Bossley*, 79 S.W.3d 30, 32 (Tex. 2002) (citing *Burlington N. R.R. Co. v. TUCO, Inc.*, 960 S.W.2d 629, 631-32 (Tex. 1997)). Therefore, Blue Cross had an opportunity to contest Juneau's impartiality through its motion to vacate. When the motion to vacate proved unsuccessful, Blue Cross may not otherwise collaterally attack the award.

Further, a party must make an application to vacate the award no later than the ninetieth day after the date of delivery of a copy of the award to the applicant. Tex. Civ. Prac. & Rem. Code Ann. § 171.088(b). That section 171.088 provides the exclusive remedy to contest an award is consistent with subsection (b). *See id.* To permit a collateral attack asserting claims against an arbitrator outside the statutory time period would render this provision meaningless. Finally, subsection (c) requires the court to confirm the award if no motion to modify or correct the award is pending. *Id.* § 171.088(c).

Blue Cross's only avenue for vacating the award existed under section 171.088. *Id.* § 171.088. A suit against an individual arbitrator is not contemplated by the arbitration act. To permit a cause of action against an arbitrator, in addition to the possibility of vacating the award, would contravene the purpose of arbitration. Speed, cost savings, and a final determination would no longer characterize an arbitration proceeding. Instead, a disgruntled party could circumvent the act and seek relief outside the statutory limitations, rendering meaningless the notion that parties can

---

*Energy Dev. Corp.*, 981 S.W.2d 38, 44 (Tex. App.—Corpus Christi 1998, pet. denied), *cert. denied,* 520 U.S. 1137 (2000) (to warrant relief from arbitration award under Federal Arbitration Act, arbitrator's partiality must be "direct, definite, and capable of demonstration rather than remote, uncertain or speculative").

contract to be bound to an arbitrated judgment.[7] In light of the Texas Arbitration Act's purpose, its procedures to vacate an arbitration award, and the strong deference afforded arbitration judgments, we hold that an application to vacate the award for an arbitrator's alleged misrepresentation or failure to disclose a relationship is the exclusive remedy under the arbitration act. *See id.*

## CONCLUSION

We overrule Blue Cross's only issue on appeal and affirm the district-court grant of Juneau's plea to the jurisdiction.

_____

Lee Yeakel, Justice

Before Chief Justice Law, Justices B. A. Smith and Yeakel.

Affirmed

Filed:   July 24, 2003

---

[7] Juneau also contends that the AAA rules are incorporated into the parties' agreement. Rule R-50 states that "neither the AAA nor any arbitrator shall be liable to any party for any act," which, Juneau argues, should preclude Blue Cross's action. Blue Cross rejoins that Juneau should not be allowed to rely on this "contractually oriented affirmative defense" to uphold the plea to the jurisdiction. By virtue of our ruling, we need not rely on this rationale.

16