**Michael PULLARA, Appellant,**

v.

**AMERICAN ARBITRATION ASSOCIATION, INC., Paxson & Associates, P.C., and Stephen B. Paxson, Appellees.**

No. 06–05–00087–CV.

Court of Appeals of Texas,
Texarkana.

Submitted April 20, 2006.

Decided May 11, 2006.

Rehearing Overruled May 31, 2006.

James T. Evans and Victoria Fair Woo, Evans & Fair, Houston, for appellant.

James J. McConn, Jr., Ruth E. Piller, Hays, McConn, Rice & Pickering, Stephen Paxson, Paxson & Associates, PC, Houston, for American Arbitration Association, Inc.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

The arbitration of Michael Pullara's dispute with Becker Fine Builders, Inc. (Becker), a Houston builder, arising out of an agreement for remodeling Pullara's apartment, did not turn out as Pullara had hoped.[1] The American Arbitration Association (AAA) arbitrator, Stephen B. Paxson, awarded Becker a total of $97,-442.29[2] against Pullara. Approximately one year later, however, Pullara discovered something Paxson had allegedly not disclosed before being selected as arbitrator—that, for many years, Paxson had acted as general counsel for the Greater Houston Builders Association (GHBA). Before being selected as arbitrator, Paxson had disclosed his *membership* in GHBA, but apparently not his *representation* of that organization.[3]

Finding himself beyond the standard ninety-day deadline to seek to vacate the award under Section 171.088 of the Texas Civil Practice and Remedies Code, Pullara did not move to set aside the award. Instead, he sued Paxson and the AAA for damages he alleges were caused by Paxson's failure to disclose his work as general counsel for the GHBA. Pullara contends Paxson's alleged failure to disclose the attorney-client relationship with GHBA revealed a bias in Becker's favor, which Pullara believes was a material fact he was entitled to know when he chose the arbitrators to strike from the AAA's list.

Pullara appeals the trial court's granting summary judgment[4] against him in favor of the defendants. We affirm the judgment of the trial court because Pullara's claims are barred by the doctrine of arbitral immunity.

The propriety of a summary judgment is a question of law. Therefore, review of the trial court's decision is de novo. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994). Summary judgment for a defendant is proper when the defendant negates at least one element of each of the plaintiff's theories of recovery or pleads

---

1.  Pullara had hired Becker to renovate his apartment. The construction contract required any dispute to be submitted for arbitration with the American Arbitration Association (AAA). A dispute arose concerning a delay in completion of the project, and Becker filed a demand for arbitration with the AAA.

2.  This amount included damages, attorney's fees, and arbitration costs.

3.  To begin the arbitration process, the AAA sent a list of ten arbitrators to Becker and Pullara. A brief biography and set of disclosures were provided for each arbitrator on the list. Paxson, one of the listed arbitrators, disclosed he was a member of the GHBA, a trade association for residential builders in the Houston area. But, Pullara contends Paxson failed to disclose he had served as counsel for the organization for over a decade. Using the information disclosed, Pullara and Becker each struck three arbitrators from the list. Paxson was one of the arbitrators

not struck by either party, and the AAA appointed him to arbitrate the dispute.

4.  Pullara asserted causes of action based on breach of contract, fraud, negligence, gross negligence, negligent misrepresentation, unjust enrichment, breach of express warranty, and violations of the Texas Deceptive Trade Practices Act. The defendants filed two separate motions for summary judgment. Each motion asserted the same four defenses: (1) Pullara's claims are barred by the doctrine of arbitral immunity, (2) Pullara's claims are pre-empted by the Texas Civil Practice and Remedies Code, (3) Pullara released Paxson and the AAA from any liability, and (4) Pullara cannot establish all the elements of his causes of action. The trial court granted summary judgment in favor of all defendants, but did not specify the grounds on which summary judgment was granted.

and conclusively establishes each element of an affirmative defense. *Science Spectrum v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997); *Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex.1993).

A summary judgment movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Once a movant establishes entitlement to summary judgment, the burden shifts to the nonmovant to show why summary judgment should not be granted. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989).

When a trial court's order granting summary judgment does not specify the ground or grounds on which it relied for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995). In this case, the trial court did not specify the grounds on which it relied for its ruling. Therefore, reversal is proper only if each theory presented by Paxson and the AAA fails.

Appellees assert that Pullara's claims are barred by the doctrine of arbitral immunity. We agree.

The doctrine of arbitral immunity emanates from judicial immunity. Judicial immunity provides judges with absolute immunity for their judicial acts. *See Stump v. Sparkman,* 435 U.S. 349, 355–56, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). The doctrine was first recognized by the English courts to protect "that independence without which no judiciary can either be respectable or useful." *Butz v. Economou,* 438 U.S. 478, 509, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Judicial immunity allows a judge to make an unbiased determination on the merits of a controversy without being swayed by the specter of litigation against the judge personally.

An arbitrator's role is functionally equivalent to that of a judge. *Olson v. NASD,* 85 F.3d 381, 382 (8th Cir.1996). As with the judiciary, it is necessary to protect arbitrators from undue influence and safeguard their independence. To those ends, judicial immunity has been extended to arbitrators as well as their sponsoring organizations. *See id.; Austern v. Chicago Bd. Options Exch., Inc.,* 898 F.2d 882, 886 (2d Cir.1990).

The only Texas case to decide arbitral immunity is *Blue Cross Blue Shield v. Juneau,* 114 S.W.3d 126 (Tex.App.-Austin 2003, no pet.). The facts in *Juneau* are strikingly similar to those with which we are confronted. Blue Cross Blue Shield had a dispute with HealthCor Liquidation Trust over payments involved with medical services and supplies. The matter was submitted to arbitration. James J. Juneau, as a member of the arbitration panel, rendered an award in favor of HealthCor. Blue Cross filed suit against Juneau alleging he had failed to disclose a prior relationship with a HealthCor attorney. Juneau had previously worked at the same law firm as Jeffrey Seckel, an attorney employed by HealthCor. Blue Cross asserted that, had it known of the relationship before the arbitration began, it would have sought Juneau's disqualification from the arbitration panel. The trial court held that Blue Cross' claims were barred by the doctrine of arbitral immunity and dismissed the suit for want of subject-matter jurisdiction. *Juneau,* 114 S.W.3d at 128–30. The *Juneau* court affirmed the trial court's judgment. *Id.* at 133, 136.

Pullara contends *Juneau* erroneously recognized the doctrine of arbitral immunity and asks this Court to issue a contradictory holding. We decline this invitation,

believing the conclusion reached by the *Juneau* court is ultimately correct.

■ The parties do not dispute that the arbitration in this case was governed by the Texas Arbitration Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.001–.098 (Vernon 2005). That Act prescribes that Texas law regarding arbitration "shall be construed to effect its purpose and make uniform the construction of other states' law applicable to an arbitration." TEX. CIV. PRAC. & REM.CODE ANN. § 171.003. This provision requires us to interpret our law as it regards arbitration in a manner that is consistent with the law of the other states, so long as that does not lead to a conflict with the statutory framework.

Arbitral immunity is recognized by virtually all of the various states, as well as by the federal courts. *See Feichtinger v. Conant,* 893 P.2d 1266, 1267 (Alaska 1995) ("Arbitral immunity is the rule in virtually all jurisdictions, and we now adopt it." (Footnote omitted.)); *Baar v. Tigerman,* 140 Cal.App.3d 979, 211 Cal.Rptr. 426, 428 (Ct.App.1983) ("Courts of this country have long recognized immunity to protect arbitrators from civil liability for actions taken in the arbitrator's quasi-judicial capacity."); *Seligman v. Allstate Ins. Co.,* 195 Misc.2d 553, 756 N.Y.S.2d 403, 405 (Sup.Ct.2003) ("rules precluding lawsuits against arbitration tribunals and arbitrators have been upheld by the courts of this state and other jurisdictions"); *Olson,* 85 F.3d at 382 ("courts of appeals have uniformly extended judicial and quasi-judicial immunity to arbitrators"); *see also* Peter B. Rutledge, *Toward a Contractual Approach for Arbitral Immunity,* 39 Ga. L.Rev. 151, 151–52 (2004).

This case is predicated on the claim that an arbitrator failed to disclose a source of possible bias. Other jurisdictions have scrutinized nondisclosure claims and have held that arbitrators are immune from such claims. In *L & H Airco, Inc. v. Rapistan Corp.,* the Minnesota Supreme Court stated:

> Failure to disclose possible conflicts of interest creates at the least an impression of bias. An impression of bias contaminates the decision making process when neutrality is essential and is not condoned by this court. Nevertheless, we decline to permit a civil suit against the arbitrator for failure to disclose prior business or social contacts because of our policy of encouraging arbitration and of protecting the independence of the decision made. Permitting civil suit for a lapse in disclosure would chill the willingness of arbitrators to serve because of the difficulty of remembering all contacts, however remote, with parties to the arbitration.

446 N.W.2d 372, 377 (Minn.1989).

A California court succinctly stated, "California and other jurisdictions recognize that arbitral immunity applies where one of the parties to the arbitration seeks to impose liability based on the alleged bias of the arbitrator or the sponsoring organization." *Stasz v. Schwab,* 121 Cal. App.4th 420, 441, 17 Cal.Rptr.3d 116 (Cal. Ct.App.2004). As already noted, this same decision has already been reached in Texas. *See Juneau,* 114 S.W.3d 126.

Were we to adopt Pullara's position and declare that the doctrine of arbitral immunity is unavailable in this state, we would run counter to, not only our sister courts of appeals, but also virtually all other states and the federal system. This would directly contravene the legislative mandate set forth in Section 171.003 quoted above.

■ In sum, it is the general principle that arbitrators and their sponsoring organizations are immune from civil liability for bias or the failure to disclose a possible source of bias. We adopt that principle.

▮ Pullara asserts that recognition of arbitral immunity conflicts with the legislative intent behind Section 154.055 of the Texas Civil Practice and Remedies Code. Section 154.055 grants immunity to volunteer arbitrators and mediators so long as they do not receive any compensation and do not "act with wanton and willful disregard of the rights, safety, or property of another." TEX. CIV. PRAC. & REM.CODE ANN. § 154.055(a) (Vernon 2005). Pullara presents this statute as evidence the Legislature intended that paid professional arbitrators be subject to civil liability. In support of this, he cites the legislative history of Section 154.055:

> Currently, impartial third parties who voluntarily serve as arbitrators or mediators in ADR proceedings are subject to the same degree of liability as those who were compensated for their services. As a result, volunteers must obtain insurance to protect themselves against the threat of negligence suits. This discourages persons from voluntarily participating in ADR proceedings.

HOUSE RESEARCH ORGANIZATION, DAILY FLOOR REPORT, Wednesday, April 28, 1993 H.B. 2237, page 98.

> Volunteer impartial third parties—such as mediators or arbitrators for court-appointed non-binding arbitration—are subject to the same degree of liability as those who participate in alternative dispute resolution on a fee for services basis.

HOUSE COMM. ON STATE AFFAIRS, BILL ANALYSIS, H.B. 2237, 73rd Leg. R.S. (1993). By its own language, however, the statute has no effect on the liability or immunity of paid arbitrators. It plainly states, "This section neither applies to nor is it intended to enlarge or diminish any rights or immunities enjoyed by an arbitrator participating in a binding arbitration pursuant to any applicable statute or treaty." TEX. CIV. PRAC. & REM.CODE ANN. § 154.055(b) (Vernon 2005). Because of this, we believe recognition of immunity for professional arbitrators does not conflict with the statute.

Pullara also contends that arbitral immunity conflicts with prior holdings of the Texas Supreme Court. *See Mariner Fin. Group v. Bossley*, 79 S.W.3d 30 (Tex.2002); *Burlington N. R.R. v. TUCO*, 960 S.W.2d 629 (Tex.1997). In *TUCO*, the Texas Supreme Court held that a

> prospective neutral arbitrator selected by the parties or their representatives exhibits evident partiality if he or she does not disclose facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality. We emphasize that this evident partiality is established from the *nondisclosure itself*, regardless of whether the nondisclosed information necessarily establishes partiality or bias.

960 S.W.2d at 636.

*TUCO* involved an arbitration panel of three arbitrators. Two of the arbitrators were "partial" arbitrators who were chosen by the parties, and the third was a "neutral" arbitrator who was chosen by the two partial arbitrators. The neutral arbitrator had received a lucrative referral from one of the partial arbitrators, which he did not disclose to the parties. The panel ruled against TUCO, which later filed a motion to vacate the award under the former Section 171.014 of the Texas Civil Practice and Remedies Code.[5]

Section 174.014 required a court to vacate an arbitration award if there has been

---

**5.** Section 171.014 has since been recodified as Section 171.088 with few material changes.

"evident partiality by an arbitrator appointed as a neutral." *Accord* TEX. CIV. PRAC. & REM.CODE ANN. § 171.088(2)(A). The court held, "[T]he fact that a reasonable person could conclude that the referral might affect [the arbitrator's] impartiality triggers the duty of disclosure. [The arbitrator's] failure to disclose the referral thus constitutes evident partiality under the Act." *TUCO*, 960 S.W.2d at 639. The court then remanded the case to the trial court with instructions to vacate the arbitration award. *Id.* The same standard was applied in *Bossley.* 79 S.W.3d 30.

Pullara asserts that the duty imposed on arbitrators to disclose facts which might show partiality or bias is meaningless if there are not repercussions for an arbitrator when he or she shirks that duty. We believe our decision is consistent with the analysis of the Texas Supreme Court.

 The *TUCO* decision examined when the "evident partiality" standard is met, requiring an arbitration award to be vacated. To that end, the court said that a neutral arbitrator had a duty to disclose sources of possible bias and held that, if the arbitrator does not perform that duty, an award should be vacated. The opinion did not create a cause of action against arbitrators for failing to perform their duty to disclose; it merely examined when particular requirements of the vacatur statute are satisfied. Providing arbitrators with immunity does not relieve them of their duty to disclose and does not conflict with the holding in *TUCO.*

In accordance with the Texas Arbitration Act, and consistent with the laws of the various states, we hold that arbitrators are immune from civil liability for failing in their duty to disclose sources of possible bias or partiality.[6] Therefore, the trial court's granting summary judgment against Pullara was properly based on arbitral immunity. Because our holding on arbitral immunity is dispositive, we need not address the other possible grounds supporting the summary judgment.

We affirm the judgment.

---

6. There is understandable concern that, as happened to Pullara, nondisclosures may go undiscovered beyond the deadline to seek to vacate the arbitration award, thus denying *any* remedy for breach of a duty to disclose. But, we believe that, added to the arbitrator candidate's duty to disclose, there is value in requiring parties to use their own due diligence to discover—ideally before the arbitrator is selected, but at least before the vacatur deadline expires—bias-revealing background information regarding their arbitrators. Also, the Texas Arbitration Act provides a discovery rule for the vacatur deadline if "the award was obtained by corruption, fraud, or other undue means...." TEX. CIV. PRAC. & REM.CODE ANN. § 171.088(a)(1), (b) (Vernon 2005). Those two factors, we believe, ameliorate the apparent harshness of the policy of arbitral immunity. And, regardless, the vacatur deadline has been crafted by the Legislature, and arbitral immunity is the law of the land.