In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00204-CR


______________________________





IN RE:


FRANK HEBERT MCCLAIN, JR.







 


Original Mandamus Proceeding







 
 



Before Morriss, C.J., Carter and Moseley, JJ.

Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 Frank Hebert McClain, Jr., has filed a petition for writ of mandamus in which he asks this
Court to conclude the trial court erred by revoking McClain's bail pending appeal. For the reasons
set forth below, we dismiss the petition for want of jurisdiction.

 The limited record before us suggests McClain was convicted for theft of trade secrets in the
159th Judicial District Court of Angelina County and sentenced to seven years' confinement. See
Tex. Penal Code Ann. § 31.05 (Vernon 2003). McClain timely appealed the trial court's judgment
to the Twelfth Court of Appeals, which the Texas Supreme Court later transferred to this Court
pursuant to the Texas Supreme Court's docket equalization authority. See Tex. Gov't Code Ann.
§ 73.001 (Vernon 2005). Thereafter, McClain made bail during the pendency of his appeal, but the
trial court later revoked that bail. McClain now asks us to order the trial court to withdraw its order
revoking his bail pending appeal because the evidence underlying the revocation order is not
supported by sufficient evidence. 

 "An original appellate proceeding seeking extraordinary relief--such as a writ of habeas
corpus, mandamus, prohibition, injunction, or quo warranto--is commenced by filing a petition with
the clerk of the appropriate appellate court." Tex. R. App. P. 52.1. The Texas Legislature has
geographically limited our original appellate jurisdiction to nineteen specific counties in northeast
Texas. Tex. Gov't Code Ann. § 22.201(g) (Vernon Supp. 2007). Angelina County is not one of
our counties; instead, Angelina County falls within the district of the Twelfth Court of Appeals. 
Tex. Gov't Code Ann. § 22.201(m) (Vernon Supp. 2007). Accordingly, a petition for writ of
mandamus seeking relief for an act done by a judge within the jurisdiction of the Twelfth Court of
Appeals must be filed with the Tyler appellate court. It matters not that we have, by way of transfer,
received a corollary matter; absent authority via statute or Texas Supreme Court transfer, we lack
jurisdiction over this matter.

 For the reasons stated, we dismiss McClain's petition for writ of mandamus.


 

 Josh R. Morriss, III

 Chief Justice 

 

Date Submitted: December 20, 2007

Date Decided: December 21, 2007


Do Not Publish











ipt>


















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00087-CV
______________________________


MICHAEL PULLARA, Appellant
 
V.
 
           AMERICAN ARBITRATION ASSOCIATION, INC., PAXSON &    ASSOCIATES, P.C., AND STEPHEN B. PAXSON, Appellees


                                              

On Appeal from the 157th Judicial District Court
 Harris County, Texas
Trial Court No. 2003-46148


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N
            The arbitration of Michael Pullara's dispute with Becker Fine Builders, Inc. (Becker), a
Houston builder, arising out of an agreement for remodeling Pullara's apartment, did not turn out as
Pullara had hoped.


 The American Arbitration Association (AAA) arbitrator, Stephen B. Paxson,
awarded Becker a total of $97,442.29


 against Pullara. Approximately one year later, however,
Pullara discovered something Paxson had allegedly not disclosed before being selected as
arbitrator—that, for many years, Paxson had acted as general counsel for the Greater Houston
Builders Association (GHBA). Before being selected as arbitrator, Paxson had disclosed his
membership in GHBA, but apparently not his representation of that organization.



            Finding himself beyond the standard ninety-day deadline to seek to vacate the award under
Section 171.088 of the Texas Civil Practice and Remedies Code, Pullara did not move to set aside
the award. Instead, he sued Paxson and the AAA for damages he alleges were caused by Paxson's
failure to disclose his work as general counsel for the GHBA. Pullara contends Paxson's alleged
failure to disclose the attorney-client relationship with GHBA revealed a bias in Becker's favor,
which Pullara believes was a material fact he was entitled to know when he chose the arbitrators to
strike from the AAA's list.
            Pullara appeals the trial court's granting summary judgment


 against him in favor of the
defendants. We affirm the judgment of the trial court because Pullara's claims are barred by the
doctrine of arbitral immunity.
            The propriety of a summary judgment is a question of law. Therefore, review of the trial
court's decision is de novo. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). Summary
judgment for a defendant is proper when the defendant negates at least one element of each of the
plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative
defense. Sci. Spectrum v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997); Wornick Co. v. Casas, 856
S.W.2d 732, 733 (Tex. 1993).
            A summary judgment movant has the burden of showing that there is no genuine issue of
material fact and that it is entitled to judgment as a matter of law. Nixon v. Mr. Prop. Mgmt. Co.,
690 S.W.2d 546, 548–49 (Tex. 1985). Once a movant establishes entitlement to summary judgment,
the burden shifts to the nonmovant to show why summary judgment should not be granted. Casso
v. Brand, 776 S.W.2d 551, 556 (Tex. 1989).
            When a trial court's order granting summary judgment does not specify the ground or grounds
on which it relied for its ruling, summary judgment will be affirmed on appeal if any of the theories
advanced are meritorious. Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995). In this
case, the trial court did not specify the grounds on which it relied for its ruling. Therefore, reversal
is proper only if each theory presented by Paxson and the AAA fails.
            Appellees assert that Pullara's claims are barred by the doctrine of arbitral immunity. We
agree.
            The doctrine of arbitral immunity emanates from judicial immunity. Judicial immunity
provides judges with absolute immunity for their judicial acts. See Stump v. Sparkman, 435 U.S.
349, 355–56 (1978). The doctrine was first recognized by the English courts to protect "that
independence without which no judiciary can either be respectable or useful." Butz v. Economou,
438 U.S. 478, 509 (1978). Judicial immunity allows a judge to make an unbiased determination on
the merits of a controversy without being swayed by the specter of litigation against the judge
personally.
            An arbitrator's role is functionally equivalent to that of a judge. Olson v. NASD, 85 F.3d 381,
382 (8th Cir. 1996). As with the judiciary, it is necessary to protect arbitrators from undue influence
and safeguard their independence. To those ends, judicial immunity has been extended to arbitrators
as well as their sponsoring organizations. See id.; Austern v. Chicago Bd. Options Exch., Inc., 898
F.2d 882, 886 (2d Cir. 1990).
            The only Texas case to decide arbitral immunity is Blue Cross Blue Shield v. Juneau, 114
S.W.3d 126 (Tex. App.—Austin 2003, no pet.). The facts in Juneau are strikingly similar to those
with which we are confronted. Blue Cross Blue Shield had a dispute with HealthCor Liquidation
Trust over payments involved with medical services and supplies. The matter was submitted to
arbitration. James J. Juneau, as a member of the arbitration panel, rendered an award in favor of
HealthCor. Blue Cross filed suit against Juneau alleging he had failed to disclose a prior relationship
with a HealthCor attorney. Juneau had previously worked at the same law firm as Jeffrey Seckel,
an attorney employed by HealthCor. Blue Cross asserted that, had it known of the relationship
before the arbitration began, it would have sought Juneau's disqualification from the arbitration
panel. The trial court held that Blue Cross' claims were barred by the doctrine of arbitral immunity
and dismissed the suit for want of subject-matter jurisdiction. Juneau, 114 S.W.3d at 128–30. The
Juneau court affirmed the trial court's judgment. Id. at 133, 136.
            Pullara contends Juneau erroneously recognized the doctrine of arbitral immunity and asks
this Court to issue a contradictory holding. We decline this invitation, believing the conclusion
reached by the Juneau court is ultimately correct.
            The parties do not dispute that the arbitration in this case was governed by the Texas
Arbitration Act. See Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001–.098 (Vernon 2005). That
Act prescribes that Texas law regarding arbitration "shall be construed to effect its purpose and make
uniform the construction of other states' law applicable to an arbitration." Tex. Civ. Prac. & Rem.
Code Ann. § 171.003. This provision requires us to interpret our law as it regards arbitration in a
manner that is consistent with the law of the other states, so long as that does not lead to a conflict
with the statutory framework.
            Arbitral immunity is recognized by virtually all of the various states, as well as by the federal
courts. See Feichtinger v. Conant, 893 P.2d 1266, 1267 (Alaska 1995) ("Arbitral immunity is the
rule in virtually all jurisdictions, and we now adopt it." (Footnote omitted.)); Baar v. Tigerman, 211
Cal. Rptr. 426, 428 (Ct. App. 1983) ("Courts of this country have long recognized immunity to
protect arbitrators from civil liability for actions taken in the arbitrator's quasi-judicial capacity.");
Seligman v. Allstate Ins. Co., 756 N.Y.S.2d 403, 405 (Sup. Ct. 2003) ("rules precluding lawsuits
against arbitration tribunals and arbitrators have been upheld by the courts of this state and other
jurisdictions"); Olson, 85 F.3d at 382 ("courts of appeals have uniformly extended judicial and
quasi-judicial immunity to arbitrators"); see also Peter B. Rutledge, Toward a Contractual Approach
for Arbitral Immunity, 39 Ga. L. Rev. 151, 151–52 (2004).
            This case is predicated on the claim that an arbitrator failed to disclose a source of possible
bias. Other jurisdictions have scrutinized nondisclosure claims and have held that arbitrators are
immune from such claims. In L & H Airco, Inc. v. Rapistan Corp., the Minnesota Supreme Court
stated:
Failure to disclose possible conflicts of interest creates at the least an
impression of bias. An impression of bias contaminates the decision making process
when neutrality is essential and is not condoned by this court. Nevertheless, we
decline to permit a civil suit against the arbitrator for failure to disclose prior business
or social contacts because of our policy of encouraging arbitration and of protecting
the independence of the decision made. Permitting civil suit for a lapse in disclosure
would chill the willingness of arbitrators to serve because of the difficulty of
remembering all contacts, however remote, with parties to the arbitration.

446 N.W.2d 372, 377 (Minn. 1989).

            A California court succinctly stated, "California and other jurisdictions recognize that arbitral
immunity applies where one of the parties to the arbitration seeks to impose liability based on the
alleged bias of the arbitrator or the sponsoring organization." Stasz v. Schwab, 121 Cal. App. 4th
420, 441 (Cal. Ct. App. 2004). As already noted, this same decision has already been reached in
Texas. See Juneau, 114 S.W.3d 126.
            Were we to adopt Pullara's position and declare that the doctrine of arbitral immunity is
unavailable in this state, we would run counter to, not only our sister courts of appeals, but also
virtually all other states and the federal system. This would directly contravene the legislative
mandate set forth in Section 171.003 quoted above.
            In sum, it is the general principle that arbitrators and their sponsoring organizations are
immune from civil liability for bias or the failure to disclose a possible source of bias. We adopt that
principle.
            Pullara asserts that recognition of arbitral immunity conflicts with the legislative intent
behind Section 154.055 of the Texas Civil Practice and Remedies Code. Section 154.055 grants
immunity to volunteer arbitrators and mediators so long as they do not receive any compensation and
do not "act with wanton and willful disregard of the rights, safety, or property of another." Tex. Civ.
Prac. & Rem. Code Ann. § 154.055(a) (Vernon 2005). Pullara presents this statute as evidence the
Legislature intended that paid professional arbitrators be subject to civil liability. In support of this,
he cites the legislative history of Section 154.055:
Currently, impartial third parties who voluntarily serve as arbitrators or mediators in
ADR proceedings are subject to the same degree of liability as those who were
compensated for their services. As a result, volunteers must obtain insurance to
protect themselves against the threat of negligence suits. This discourages persons
from voluntarily participating in ADR proceedings. 

House Research Organization, Daily Floor Report, Wednesday, April 28, 1993 H.B. 2237,
page 98.
 
Volunteer impartial third parties – such as mediators or arbitrators for court-appointed non-binding arbitration – are subject to the same degree of liability as
those who participate in alternative dispute resolution on a fee for services basis. 

House Comm. On State Affairs, Bill Analysis, H.B. 2237, 73rd Leg. R.S. (1993). By its own
language, however, the statute has no effect on the liability or immunity of paid arbitrators. It plainly
states, "This section neither applies to nor is it intended to enlarge or diminish any rights or
immunities enjoyed by an arbitrator participating in a binding arbitration pursuant to any applicable
statute or treaty." Tex. Civ. Prac. & Rem. Code Ann. § 154.055(b) (Vernon 2005). Because of
this, we believe recognition of immunity for professional arbitrators does not conflict with the
statute.
            Pullara also contends that arbitral immunity conflicts with prior holdings of the Texas
Supreme Court. See Mariner Fin. Group v. Bossley, 79 S.W.3d 30 (Tex. 2002); Burlington N. R.R.
v. TUCO, 960 S.W.2d 629 (Tex. 1997). In TUCO, the Texas Supreme Court held that a
prospective neutral arbitrator selected by the parties or their representatives exhibits
evident partiality if he or she does not disclose facts which might, to an objective
observer, create a reasonable impression of the arbitrator's partiality. We emphasize
that this evident partiality is established from the nondisclosure itself, regardless of
whether the nondisclosed information necessarily establishes partiality or bias.
960 S.W.2d at 636.
            TUCO involved an arbitration panel of three arbitrators. Two of the arbitrators were "partial"
arbitrators who were chosen by the parties, and the third was a "neutral" arbitrator who was chosen
by the two partial arbitrators. The neutral arbitrator had received a lucrative referral from one of the
partial arbitrators, which he did not disclose to the parties. The panel ruled against TUCO, which
later filed a motion to vacate the award under the former Section 171.014 of the Texas Civil Practice
and Remedies Code.



            Section 174.014 required a court to vacate an arbitration award if there has been "evident
partiality by an arbitrator appointed as a neutral." Accord Tex. Civ. Prac. & Rem. Code Ann.
§ 171.088(2)(A). The court held, "[T]he fact that a reasonable person could conclude that the
referral might affect [the arbitrator's] impartiality triggers the duty of disclosure. [The arbitrator's]
failure to disclose the referral thus constitutes evident partiality under the Act." TUCO, 960 S.W.2d
at 639. The court then remanded the case to the trial court with instructions to vacate the arbitration
award. Id. The same standard was applied in Bossley. 79 S.W.3d 30.
            Pullara asserts that the duty imposed on arbitrators to disclose facts which might show
partiality or bias is meaningless if there are not repercussions for an arbitrator when he or she shirks
that duty. We believe our decision is consistent with the analysis of the Texas Supreme Court.
            The TUCO decision examined when the "evident partiality" standard is met, requiring an
arbitration award to be vacated. To that end, the court said that a neutral arbitrator had a duty to
disclose sources of possible bias and held that, if the arbitrator does not perform that duty, an award
should be vacated. The opinion did not create a cause of action against arbitrators for failing to
perform their duty to disclose; it merely examined when particular requirements of the vacatur
statute are satisfied. Providing arbitrators with immunity does not relieve them of their duty to
disclose and does not conflict with the holding in TUCO.
            In accordance with the Texas Arbitration Act, and consistent with the laws of the various
states, we hold that arbitrators are immune from civil liability for failing in their duty to disclose
sources of possible bias or partiality.


 Therefore, the trial court's granting summary judgment against
Pullara was properly based on arbitral immunity. Because our holding on arbitral immunity is
dispositive, we need not address the other possible grounds supporting the summary judgment.
            We affirm the judgment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          April 20, 2006
Date Decided:             May 11, 2006